### R. ODENTHAL V. THE STATE.

No. 9967.   Delivered March 24, 1926.

Rehearing granted January 12, 1927.

**1.—Transportation of Intoxicating Liquor—Search and Seizure—Statute Construed.**

Where appellant was observed and followed by officers while driving his automobile, and being stopped by said officers, and his car searched, in which was discovered a quantity of whiskey, such search was lawful, and the court properly received evidence of search, and discovery of the whiskey, in his possession.

**2.—Same—Continued.**

It is a well settled rule of statutory construction that when two different enactments treat of the same subject matter, that both acts, so far as they are not in direct conflict, are to be given effect. Art. 4-a C. C. P. 1925, prohibits search and seizure without warrant, while Art. 690 C. C. P. 1925, authorizes the seizure, without warrant of any automobile used in the presence of peace officers, for the unlawful transportation of intoxicating liquor.

**3.—Same—Continued.**

These two articles of our statute are not in conflict with each other, and both may be given effect. Under Art. 690 C. C. P. 1925, in the case before us, the officers were authorized, without a search warrant, to seize the automobile of appellant in which the liquor was being transported and evidence discovered by such search was admissible against him upon the trial of his case. Following Carroll v. United States, 69 Law Ed. 543, and other cases cited.

ON REHEARING.

**4.—Same—Search and Seizure—"Probable Cause."**

The original opinion in this case was predicated upon the assumption of the sufficiency of the evidence to show probable cause for the search of the automobile of the appellant. The accuracy of that assumption is now challenged by the appellant, in his motion for rehearing.

**5.—Same—Continued.**

The search of an automobile upon the public highway, may be made without warrant, where the seizing officer has knowledge or information of facts, constituting "probable cause." The legality of the search is to be determined alone upon the existence of "probable cause" *before* the search is made, and is not to be justified by knowledge ascertained through the search, or upon mere suspicion.

**6.—Same—"Probable Cause" Defined.**

"If the facts and circumstances before the officers are such as to warrant a man of prudence and caution in believing that the offense has been committed, it is sufficient." See Carroll v. United States, 267 U. S. 132, 39 Am. Law Rep. 791. Also see this opinion on rehearing, for an exhaustive discussion of the subject, and collation of authorities.

**7.—Same—Continued.**

Measured by the rule above set out, the present record fails to show that the officers searching the appellant's automobile had "probable cause" warranting the search, but on the contrary it appears that the search was made upon bare suspicion.

**8.—Same—Evidence of Search and Seizure—Statute Construed.**

Where at the time of appellant's arrest, and the search and seizure, the laws of this state made evidence secured by the search and seizure admissible against him, but at the time of his trial this rule of evidence had been changed by an act of the legislature, the rule of evidence prevailing *at the time of the trial* governs, and the evidence secured by the search

and seizure become inadmissible.  See opinions on rehearing for collation of authorities.  Also see concurring opinion of Judge Hawkins, and dissenting opinion of Judge Lattimore.

Appeal from the District Court of Carr County.  Tried below before the Hon. Hugh Carney, Judge.

Appeal from a conviction for transporting intoxicating liquor; penalty two years in the penitentiary.

The opinion states the case.

*Ballowe & King* of Dallas, for appellant.  On change in rule of evidence, appellant cites:  Corpus Juris, Vol. 12 Sec. 813, page 1105; Mrouse v. State, 21 S. W. 764; Askew v. State, 127 S. W. 1037; James v. State, 163 S. W. 61.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—The offense is the unlawful transportation of intoxicating liquor; punishment fixed at confinement in the penitentiary for a period of two years.

On the 13th of March, 1923, appellant was seen by peace officers driving an automobile along the public road.  Their suspicions were aroused, and after following him for a mile or two, they stopped him and told him that they would like to look in his car.  He made no reply.  They then opened the back end of the car and found that it contained a number of bottles of whiskey.  They took the appellant and his car in custody.  After reaching the jail, the whiskey was taken from the car by the sheriff who was not with the arresting party.

Against the receipt of the evidence, appellant invokes the acts of the legislature touching the searches and seizures embraced in Chapters 49 and 149, Acts of the 39th Leg., Reg. Session.  In Chap. 49, supra, it is declared:

"No evidence obtained by an officer or other person in violation of any provision of the constitution or laws of the State of Texas, or of the United States of America, shall be admitted in evidence against the accused on trial of any criminal case."

In Chap. 149, supra, it is said:

"It shall be unlawful for any person or peace officer, or state ranger, to search the private residence, actual place of habitation, place of business, person or personal possessions of any person, without having first obtained a search warrant as required by law."

Each of these laws became effective June 7, 1925. It is therefore manifest that at the time the search and seizure were made in the instant case, the statute making such search and seizure unlawful was not in force. However, both of the above-named statutes were in force at the time of the trial.

Appellant insists that upon the principles applied in Mrous v. State, 21 S. W. 764; Askew v. State, 127 S. W. 1037; James v. State, 163 S. W. 61, the court was in error in receiving the testimony in the instant case.

Mrous v. State, supra, was a case of seduction. At the time the unlawful act took place, the law prohibited the receipt in evidence of the testimony of the prosecutrix. Subsequently and before the trial, the law was changed so as to render the testimony of the prosecutrix admissible against the accused. The court decided that in receiving the testimony of the prosecutrix no error was committed.

In Askew's case, supra, it appeared from the development of the facts that appellant had made a verbal confession. At the time the offense was committed and at the time the confession was made, the law permitted the receipt in evidence of a verbal confession. Subsequently and before the trial, however, the law was amended so as to exclude the verbal confession and demand that it be in writing. See Art. 810, Vernon's Tex. Crim. Stat., Vol. 2, p. 750. This court held the confession inadmissible.

In James' case, supra, at the time the offense was committed, the practice permitted an exception to the charge to be made after verdict. Subsequent to the commission of the offense and before the trial, the law was amended as embraced in Art. 737a, Vernon's Tex. Crim. Stat., Vol. 2, p. 497, which required exceptions to the charge of the court to be made before verdict. It was held that the amended act controlled and that the court would not consider objections to the charge not presented before verdict in accord with Art. 737a, supra.

In the Mrous case, supra, are found several citations of authority defining *ex post facto law,* from one of which citations we quote:

" 'I will state what I consider *ex post facto,* within the words and intent of the prohibition:

" 'Every law that alters the legal rules of evidence, and receives less or different testimony than the law required at the time of the commission of the offense in order to convict the offender.

" ' * * * But I do not consider any law *ex post facto,* within the prohibition, that modifies the rigor of the criminal law, but only those that create or aggravate the crime or increase the

punishment, or change the rules of evidence for the purpose of conviction.'" (Murray v. State, 1 Tex. Crim. App. 428.)

To the mind of the writer, the soundness of the announcement in the Mrous case, supra, is questionable for the reason that after the commission of the offense, a statute was passed allowing the state to convict the accused upon testimony which would not have been usable for that purpose at the time the offense was committed. In other words, it changed the rules of evidence "for the purpose of a conviction." The Askew case, on the contrary, changed the rules of evidence in the interest of the accused and rendered unavailable to the state testimony which it might have used against the accused at the time the offense was committed. The James' case occurs to the writer as applying a sound rule in that it touched no rule of evidence but merely the matter of procedure upon the trial with reference to the manner of excepting to the charge of the court.

Appellant maintains that his contention is not answered by the fact that at the time of the alleged offense, Chap. 149, defining an unlawful search and providing the punishment therefor, and Art. 49, forbidding the use of evidence obtained, were not in effect for the reason: first, that under the principles applied by this court in Askew's case the subsequent passage of the statute mentioned inured to his benefit; and second, for the reason that independent of Art. 149, an unreasonable search was unlawful by virtue of Sec. 9, Art. 1 of the state constitution. In Welchek's case, 93 Tex. Crim. Rep. 277, it was held, on many precedents, that evidence obtained by an authorized search was not to be excluded upon that ground alone. In that case it was said:

"Evidence which is pertinent to the issue is admissible, although it may have been procured in an irregular, or even in an illegal manner. A trespasser may testify to pertinent facts observed by him, or may put in evidence pertinent articles or papers found by him while trespassing. For the trespass he may be held responsible civilly, and perhaps criminally; but his testimony is not thereby rendered incompetent."

The holding in the Welchek case, supra, is in substance that the public is entitled to evidence of crime notwithstanding the evidence may have been obtained by an unauthorized act.

Touching the claim of the appellant that as the law stood at the time of his trial, evidence previously obtained by an unreasonable search could not be properly received is not deemed essential to the decision of the case in hand for the reason that the search and seizure revealed by the present facts seem authorized by both the state and federal laws.

In Art. 690, P. C., 1925, any "automobile used for the unlawful transportation of intoxicating liquor" is declared to be a public nuisance; and "any automobile used in the presence and view of any peace officer of this state for the unlawful transportation of intoxicating liquors shall be seized without a warrant" by such peace officer.

The provisions of Chap. 149, supra, are brought forward in Art. 4a, C. C. P., 1925. In Art. 4a, the search of "personal possessions" without a search warrant is declared unlawful. We understand the law to demand that both of these statutes (Arts. 4a and 690), so far as they are not in direct conflict, to be given effect. Applying this principle to the general provisions of Art. 4a regarding the search of "personal possessions," so far as it might relate to an automobile in which intoxicating liquors were at the time unlawfully transported, would be controlled by the specific provisions of Art. 690, P. C., 1925, which are quoted above and in which a seizure, without warrant, is authorized by a peace officer in whose presence an "automobile" is used in the unlawful transportation of intoxicating liquor. If this analysis is correct, the circumstances of the present transaction, in connection with the state law mentioned, authorized the seizure, without warrant, of the automobile and the intoxicating liquor therein contained, which were unlawfully transported in the presence of the peace officer. Whether the seizure was in violation of the federal law, we find in the interpretation by the Supreme Court of the United States, in its most recent decision upon the subject, (Carroll v. United States, 69 Law Ed., p. 543), that the seizure of an automobile and its cargo of whiskey under circumstances such as those revealed in the present record was held not in violation of the law or the Constitution of the United States. From that decision we quote:

"In the light of these authorities, and what is shown by this record, it is clear the officers here had justification for the search and seizure. This is to say, that the facts and circumstances within their knowledge, and of which they had reasonably trustworthy information, were sufficient in themselves to warrant a man of reasonable caution in the belief that intoxicating liquor was being transported in the automobile which they stopped and searched."

We are constrained to hold that upon the facts in the present case, the court was not in error in receiving the testimony of the officers who seized the whiskey in the jar which the appellant was transporting in his automobile.

The judgment is affirmed.

*Affirmed.*

## ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE. — In the original opinion the sufficiency of the evidence to show probable cause for the search of the automobile of the appellant was assumed. The accuracy of that assumption is now challenged by the appellant and it therefore becomes proper to review the facts which are before this court.

Glasscock, a Texas ranger stationed at Marshall, was one of the arresting officers. He had no acquaintance with the appellant, but he, in company with Ranger Ezell, made the arrest upon the public road. From Glasscock's testimony we take the following quotations:

"When we first saw Odenthal he was traveling west in a Dodge coupe. * * * There was nobody with him. We·met him something like four miles from here, and then we turned around and followed him something like a mile and a half or two miles and overtaken him. We stopped him and told him we would like to look in his car. He didn't say anything. I was kind of in front and Ezell was talking to him. Ezell went to the car before I did, and he came back, and I walked back to the car, and Ezell says: 'It is loaded.' One of us got in the car with him, Ezell or I one, and we brought him back here to the jail. We opened the back end of the car and looked in it, out there on the road, and then we searched it again when we got to the jail and unloaded the whiskey. * * * I just saw him and suspected he had some whiskey and arrested him, when I ascertained out there that he did have."

Ezell did not testify.

As applied to the search without warrant of an automobile in which intoxicating liquor is unlawfully transported, the announcement of the Supreme Court of the United States in the opinion of Chief Justice Taft in the case of Carroll v. United States, 69 Law Ed. 543, states the law with unmistakable clearness. It quotes a part of the Fourth Amendment to the Constitution of the United States, as follows:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

The history of the searches and seizures which led to the amendment and its subsequent construction by the court is stated

in the most instructive and interesting manner.    From the opinion we quote:

"The intent of Congress to make a distinction between the necessity for a search warrant in the searching of private dwellings and in that of automobiles and other road vehicles in the enforcement of the Prohibition Act is thus clearly established by the legislative history of the Stanley Amendment.    Is such a distinction consistent with the Fourth Amendment?    We think that it is.    The Fourth Amendment does not denounce all searches or seizures, but only such as are unreasonable."

"*On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid.*"

"We have made a somewhat extended reference to these statutes to show that the guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the government, as recognizing a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought."

"*It would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile on a chance of finding liquor, and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a search.* * * * Those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise."

"The measure of legality of such a seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband liquor therein which is being illegally transported."

"We here find the line of distinction between legal and illegal seizures of liquor in transport in vehicles.    It is certainly a reasonable distinction."

"Such a rule fulfills the guaranty of the Fourth Amendment.

In cases where the securing of a warrant is reasonably practicable, it must be used. * * * In cases where seizure is impossible except without warrant, the seizing officer acts unlawfully and at his peril unless he can show the court probable cause. United States v. Kaplan, 286 Fed. 963, 972."

*"But we are pressed with the argument that if the search of the automobile discloses the presence of liquor, and leads, under the statute, to the arrest of the person in charge of the automobile the right of seizure should be limited by the common law rule as to the circumstances justifying an arrest without warrant for a misdemeanor."*

"The argument for defendants is that, as the misdemeanor, to justify arrest without warrant, must be committed in the presence of the police officer, the offense is not committed in his presence unless he can, by his senses, detect that liquor is being transported, no matter how reliable his previous information, by which he can identify the automobile as loaded with it."

*"The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law."*

On the subject of "probable cause," the opinion states:

"The necessity for probable cause in justifying seizures on land or sea, in making arrests without warrant for past felonies, and in malicious prosecution and false imprisonment cases, has led to frequent definition of the phrase. In Stacey v. Emery, 97 U. S. 642, 645, 24 L. Ed. 1035, 1036, a suit for damages for seizure by a collector, this court defined probable cause as follows:

" 'If the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offense has been committed, it is sufficient'."

"But, as we have seen, good faith is not enough to constitute probable cause. That faith must be grounded on facts within knowledge of the Director General's agent, which, in the judgment of the court, would make his faith reasonable."

The case of Carroll v. United States, 267 U. S. 132, will be found reported in the 39 Am. Law. Rep. 791, and in the notes on page 831 are a great number of recent cases decided in the courts of various states of the Union in which the principles announced by Chief Justice Taft in the opinion in Carroll v. United States, supra, are applied to various states of facts, some of them holding the evidence sufficient to justify the search; others, the contrary. Among the latter are the follow-

ing: Batts v. State, 114 N. E. 23; Adkins v. Com., 202 Ky., 259
S. W. 32; State v. Pluth, 157 Minn. 145, 195 N. W. 789; Ash-
brook v. State, 92 Okla. 287, 219 Pac. 347; Klein v. State, 223
Pac. 201; Carroll v. State (Okla. Crim. Rep.), 235 Pac. 935.

The uniform rule controlling the state courts in holding the
seizure legal, as well as those holding it illegal, is in consonance
with the announcement in Carroll v. United States, supra.   That
is to say, that the search of an automobile upon the public high-
way may be made without warrant where the seizing officer has
knowledge or information of facts constituting probable cause
as above defined.   The legality of the search is to be determined
alone upon the existence of "probable cause" *before* the search is
made, and is not to be justified by knowledge ascertained through
the search.   The search cannot be justified upon mere suspicion.

The facts before the United States Supreme Court in the
Carroll case, supra, are stated in the opinion thus:

"The search and seizure were made by Cronenwett, Scully and
Thayer, Federal prohibition agents, and one Peterson, a State
officer, in December, 1921, as the car was going westward on the
highway between Detroit and Grand Rapids, at a point sixteen
miles outside of Grand Rapids.   The facts leading to the search
and seizure were as follows:   On September 29th, Cronenwett
and Scully were in an apartment in Grand Rapids.   Three men
came to that apartment, a man named Kruska, and the two
defendants, Carroll and Kiro.   Cronenwett was introduced to
them as one Stafford, working in the Michigan Chair Company
in Grand Rapids, who wished to buy three cases of whiskey.
The price was fixed at $130 a case.   The three men said they
had to go to the east end of Grand Rapids to get the liquor, and
that they would be back in half or three-quarters of an hour.
They went away and in a short time Kruska came back and said
they could not get it that night, that the man who had it was
not in, but that they would deliver it the next day.   They had
come to the apartment in an automobile known as an Oldsmobile
roadster, the number of which Cronenwett then identified, as
did Scully.   The proposed vendors did not return the next day,
and the evidence disclosed no explanation of their failure to do
so.   One may surmise that it was suspicion of the real character
of the proposed purchaser, who Carroll subsequently called by
his first name when arrested in December following.   Cronen-
wett and his subordinates were engaged in patrolling the road
leading from Detroit to Grand Rapids, looking for violations of
the Prohibition Act.   This seems to have been their regular tour
of duty.   On the 6th of October, Carroll and Kiro, going east-

ward from Grand Rapids in the same Oldsmobile roadster, passed Cronenwett and Scully some distance out from Grand Rapids. Cronenwett called to Scully, who was taking lunch, that the Carroll boys had passed them, going toward Detroit, and sought with Scully to catch up with them, to see where they were going. The officers followed as far as East Lansing, half-way to Detroit, but there lost trace of them. On the 15th of December, some two months later, Scully and Cronenwett, on their regular tour of duty with Peterson, the State officer, were going from Grand Rapids to Ionia, on the road to Detroit, when Kiro and Carroll met and passed them in the same automobile, coming from the direction of Detroit and Grand Rapids. The government agents turned their car and followed the defendants to a point some sixteen miles east of Grand Rapids, where they stopped them and searched the car. They found behind the upholstering of the seats, the filling of which had been removed, sixty-eight bottles. These had labels on them, part purporting to be certificates of English chemists that the contents were blended Scotch whiskeys, and the rest, that the contents were Gordon gin, made in London. When an expert witness was called to prove the contents, defendants admitted the nature of them to be whiskey and gin. When the defendants were arrested, Carroll said to Cronenwett, 'Take the liquor and give us one more chance and I will make it right with you,' and he pulled out a roll of bills, of which one was for $10. Peterson and another took the two defendants and the liquor and the car to Grand Rapids, while Cronenwett, Thayer and Scully remained on the road, looking for other cars, of whose coming they had information. The officers were not anticipating that the defendants would be coming through on the highway at that particular time, but when they met them there they believed they were carrying liquor; and hence the search, seizure, and arrest."

The analysis and conclusion from these facts made by Chief Justice Taft, writing the majority opinion in the Carroll case, supra, were as follows:

" 'It has been very justly observed at the bar that the court is bound to take notice of public facts and geographical positions; and that this remote part of the country has been infested, at different periods, by smugglers, is a matter of general notoriety, and may be gathered from the public documents of the government.'

"We know in this way that Grand Rapids is about 152 miles from Detroit, and that Detroit and its neighborhood along the Detroit river, which is the international boundary, is one of the

most active centers for introducing illegally into this country spirituous liquors for distribution into the interior. It is obvious from the evidence that the prohibition agents were engaged in a regular patrol along the important highways from Detroit to Grand Rapids, to stop and seize liquor carried in automobiles. They knew, or had convincing evidence to make them believe, that the Carroll boys, as they called them, were so-called 'bootleggers' in Grand Rapids—i. e., that they were engaged in plying the unlawful trade of selling such liquor in that city. The officers had soon after noted their going from Grand Rapids half-way to Detroit, and attempted to follow them to that city to see where they went, but they escaped observation. Two months later these officers suddenly met the same men on their way westward, presumably from Detroit. The partners in the original combination to sell liquor in Grand Rapids were together in the same automobile they had been in the night when they tried to furnish the whiskey to the officers, which was thus identified as part of the firm equipment. They were coming from the direction of the great source of supply for their stock to Grand Rapids, where they plied their trade. That the officers, when they saw the defendants, believed that they were carrying liquor, we can have no doubt; and we think it is equally clear that they had reasonable cause for thinking so. Emphasis is put by defendant's counsel on the statement made by one of the officers that they were not looking for defendants at the particular time when they appeared. We do not perceive that it has any weight. As soon as they did appear, the officers were entitled to use their reasoning faculties upon all the facts of which they had previous knowledge in respect to the defendants."

The facts above set out which were before the court were quite sufficient to authorize the search without warrant, under numerous cases, among which are the following: Thomas v. State (Ind.), 146 N. E. 850; Rowland v. Commonwealth, 202 Ky. 92, 259 S. W. 33; People v. Kamhout, 227 Mich. 172, 198 N. W. 831; Moore v. State (Miss.), 103 So. 483; State ex rel. Brown v. District Ct. (Mont.), 232 Pac. 201; State v. Codette, 188 N. C. 497; State v. Dinger (N. D.), 199 N. W. 196; McAdams v. State, 101 Okla. 267, 219 Pac. 145; Commonwealth v. Klein, 81 Pa. Super. Ct. 551; Farmer v. State, 148 Tenn. 216; State v. Secrest, 131 Wash. 217, 229 Pac. 744. In all of these cases it will be found that the facts met the tests above mentioned, namely, that an essential prerequisite for the validity of the seizure without warrant, *probable cause,* as distinguished from *mere suspicion,* must be present.

If the officers, before making the search of the appellant's car, had any information or knowledge concerning the business or reputation of the appellant, or the contents of his car, the record fails to disclose it. The search apparently was made upon mere surmise or suspicion. Evidence of facts showing "probable cause" as named in the Constitution and statute and defined by the courts, is entirely wanting. As the record comes before this court, it is void of any foundation for the search other than mere suspicion, and was therefore contrary to the provisions of the Fourth Amendment to the Federal Constitution, and to Section 9, Article 1, of the State Constitution.

Having reached the conclusion that the evidence in the present record fails to show that the officers searching the appellant's automobile had "probable cause" warranting the search, but on the contrary it appearing from the evidence without conflict that the search was made upon bare suspicion, it becomes necessary to determine whether, under the law of this state, the evidence of the officers obtained through an unreasonable search was properly receivable against the accused.

As stated in the original opinion, the obvious purpose of the legislature in enacting Chapters 49 and 149, supra, parts of which are quoted in the original opinion, was to change the rule of evidence announced by this court in the case of Welchek v. State, 93 Tex. Crim. Rep. 271, and other cases following it.

To the introduction of the evidence of the state's witnesses named showing the fact of the search of the appellant's automobile and the result thereof, he interposed an objection which the court overruled, and the ruling is brought to this court for review by proper bill of exceptions.

As a guaranty against unreasonable seizures and searches, Article 1, Section 9 of the Bill of Rights reads thus:

"The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation."

From Chapter 149, Acts of the Thirty-ninth Legislature, we quote as follows:

"Section 1. The people shall be secure in their persons, houses, papers and possessions from all unreasonable seizures or searches; and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath, or affirmation."

"Section 2. It shall be unlawful for any person or peace officer, or state ranger, to search the private residence, actual place of habitation, place of business, person or personal possessions of any person, without having first obtained a search warrant as required by law."

Section 3 states the penalty for violating the act and authorizes a fine or imprisonment or both.

The emergency clause embraced in Section 4, reads in part as follows:

"The fact that the people are not secure in their persons, houses, papers and possessions from unlawful and unreasonable seizures and searches, creates an emergency."

Chapter 49, Acts of Thirty-ninth Legislature, amends Title 8, Chapter 7, C. C. P., 1911, adding Article 787a, as follows:

"No evidence obtained by an officer or other person in violation of any provision of the Constitution or laws of the State of Texas, or of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."

Section 2 of the Act reads thus:

"The fact that there has been used against citizens of this state evidence obtained in violation of the Constitution of the State, and that there is now no statute expressly forbidding the same, creates an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days be suspended, and said rule is so suspended, and that this Act shall take effect and be in force from and after its passage, and it is so enacted."

Both of these Acts reflects the intent of the legislature to supply the omissions in the law pointed out by the decisions of this court, notably in Welchek v. State, 93 Tex. Crim. Rep. 273, in which it was shown that no statute penalizes an illegal search, and in which it was held that the courts should not penalize it by excluding evidence of crime obtained in such a search. From that decision we take the following quotation:

"In our judgment, however, the proper decision of the question before us rests on the fact that there is nothing in the constitutional provision inhibiting unreasonable searches and seizures which lays down any rule of evidence with respect to the evidential use of property seized under search without warrant, nor do we think anything in said constitutional provision can be properly construed as laying down such rule. It seems to us that it is going as far as the provision of said constitution demands to admit that one whose property is wrongfully obtained in any manner, is entitled to his day in some court of competent jurisdiction and to a hearing of his claim for the

restoration of such property, and for the punishment of the trespasser, or the announcement that the citizens may defend against such intrusion; but it must always be borne in mind, if there appear the fact that said property by its physical appearance upon the trial will aid the court in arriving at a correct conclusion in a criminal case, that the owner's right to return thereof should be held in abeyance until said property has served the government—the whole people, by its appearance in testimony. Nor can the rejection of the proffer in testimony of such property be soundly sustained upon the theory that the officer or person who removed such property having evidential value from the house or curtilage of its owner, should be punished for an entry into said premises without search warrant. To reject such evidence for such reason or to completely return same to the owner and relinquish jurisdiction over same, would in nowise be a punishment to the officer but would rather be a hurt inflicted upon the people whose interest in the punishment of crime suffers because the court may think the officer should be rebuked for the manner in which he obtained the evidence."

In making this announcement, this court declared the law as understood by its members and in accord with the rule announced by the courts of last resort in many jurisdictions to which reference is made in the opinion mentioned. The legislature having seen fit, by the passage of the statutes mentioned, Chapters 49 and 149, supra, to change the rule of evidence applied in the Welchek case, supra, it becomes the duty of this court to interpret them and unless invalid, to give them effect.

In the absence of constitutional inhibition, the legislature may make an act a crime, whether moral turpitude is involved in the act or not. Ruling Case Law, Vol. 6, p. 156; Missouri v. Berger, 3 L. R. A. (N. S.), p. 530. We are aware of no constitutional inhibition, either express or implied, obstructing the power of the legislature, by appropriate legislation, to penalize the peace officer for making a search of the property of a citizen which he was forbidden to make by the Constitution of the United States and of the state. Chapter 49, supra, prescribes a rule of evidence. In such an enactment the legislature has exercised a right which, by judicial decision, it has often been declared to possess. A pertinent illustration of the authority of the legislature to prescribe rules of evidence as it is attempted in Chapter 49, supra, is found in the enactment of the legislature of this state declaring the possession of more than one quart of intoxicating liquor prima facie evidence that such liquor was possessed for the purpose of sale. This statute has been upheld

in Stoneham v. State, 268 S. W. 156, and numerous others in this state, and by practically all of the other states of the Union as shown by the report of the case of United States v. Lapointe, 31 Amer. Law. Rep. 1222.

It is likewise illustrated in the statute declaring that a conviction may not be had upon the uncorroborated testimony of an accomplice witness. See Art. 718, C. C. P. 1925, and the exemptions from the operation of the statute last mentioned, whereby the testimony of co-actors and persons criminally connected with violations of the law forbidding the transportation or the possession for the purpose of sale of intoxicating liquors, which has been upheld on numerous occasions.

Other instances in which the same principle has been applied are found in the statute declaring the husband and wife incompetent witnesses against each other, and declaring persons charged with the same offense competent witnesses for the state, but incompetent for the accused. Many other illustrations might be added.

The soundness of the proposition, however, that the legislature in declaring that the evidence obtained by a search forbidden by the Constitution of the United States and of the state and by the statutes of the state, could not be received in evidence, was acting within the scope of its authority seems not open to question. The policy of the law is not a matter for judicial consideration. See Hopt v. People, 110 U. S. 574.

The act upon which the present prosecution is founded and the search of the appellant's automobile took place in March, 1925. The acts of the legislature discussed, namely, Chapters 49 and 149, supra, became effective June, 1925. The trial took place in October of the same year.

It is contended by the state, notwithstanding the search of the appellant's automobile was illegal, that the evidence obtained thereby, coming from the officers who made the search, was nevertheless admissible in evidence against the appellant. This contention is based upon the fact that at the time the offense was committed and the search made, the Acts of the Legislature mentioned, Chapters 149 and 49, supra, were not in force. It is true that at the time the search was made there was no penal offense attached to the act. It cannot, however, be justly held to have been a legal act for the reason that the search of the appellant's automobile without a search warrant was forbidden by the Fourth Amendment to the Constitution of the United States and by Sec. 9 of Art. 1 of the Constitution of this state forbidding unreasonable searches and seizures. Appellant there-

fore contends that Chapter 49, supra, being a procedure statute in force at the time of the trial, operated to exclude evidence obtained by a search of the appellant's automobile illegally made at a time antecedent to the date that the statute mentioned became effective.

There is no legal obstacle to the application of statutes changing procedure to proceedings pending at the time of their enactment. Where the application does not impair or destroy vested rights and when a new statute deals with procedure only—prima facie it applies to all actions—to those which have accrued or pending as well as those subsequently accruing. Ruling Case Law, Vol. 25, p. 791, Sec. 38; Underhill's Crim. Ev., 3rd Ed., Sec. 11. This principle has been uniformly given effect with reference to criminal statutes in both federal and state courts. For instance, in Hopt v. Utah, 110 U. S. 574, 28 Law Ed. 262, there was an enlargement of the class of persons competent to testify in criminal cases, and in such testimony, over the objection of the accused, the court said:

"Alterations which do not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt, but, leaving untouched the nature of the crime, and the amount or degree of proof essential to conviction, only removes existing restrictions upon the competency of certain classes of persons as witnesses, relate to modes of procedure only, in which no one can be said to have a vested right, and which the state, upon grounds of public policy, may regulate at pleasure. *Such regulations of the mode in which the facts constituting guilt may be placed before the jury, can be made applicable to prosecutions or trials thereafter had,* without reference to the date of the commission of the offense charged." (Hopt v. People, 110 U. S. 574.)

In Mallett v. North Carolina, 181 U. S. 594, 45 Law Ed. 1018, a statute upholding the right of the state to appeal in criminal cases was made applicable to pending as well as to future trials. Many other examples are found in Rose's Notes on United States Reports, Vol. 12, Rev. Ed., p. 415. Many of these relate to the application of statutes changing the rules of evidence. Numerous illustrations are also found in the decisions of this court. For example, in Mrous v. State, 31 Tex. Crim. Rep. 600, the statute under consideration permitted the prosecutrix in a trial for seduction to testify, when at the time the offense was committed, she was, by law, made an incompetent witness. In the opinion the court cited with approval precedents holding that a statute enlarging the class of persons who are competent wit-

nesses was applicable to offenses previously committed. This was applied against the accused. It would seem to follow that a statute restricting the class of persons by whom the state might prove the guilt of the accused would bear upon previous as well as subsequent offenses. Such was the express holding of this court in Askew's case, 127 S. W. 1037. Askew was convicted of homicide. The sheriff testified that after his arrest and while under arrest appellant made, in the presence of the sheriff, a verbal confession, and this was proved by the testimony of the sheriff. At the time the offense was committed and the confession made, it was competent to prove that the accused, while under arrest, had made a verbal confession. After the offense was committed and the confession was made, a statute was passed requiring that such a confession, to be admissible, should be in writing. This court held the verbal confession not admissible, and said:

"At the time the confession was made, the present law requiring a confession to be reduced to writing had not been enacted; but that is immaterial. Appellant is now authorized to interpose any objection to such confession, although made before the enactment of the statute, although it may have been admissible as a parol confession at the time it was made. The authorities are quite clear upon this question, and we think unnecessary to be cited."

The principle stated has been applied by this court in James v. State, 163 S. W. 61; McInturf v. State, 20 Tex. Crim. App. 335; Blount v. State, 31 S. W. 652; Wright v. State, 163 S. W. 976; Barnett v. State, 42 Tex. Crim. Rep. 306; Ybarra v. State, 164 S. W. 10. See also Thompson v. State, 42 S. W. 949, in which the Supreme Court of Missouri reviewed the precedents and reasons supporting the law.

In the present instance, in searching the automobile of the appellant the officers who testified against him acted without "probable cause," on mere suspicion, and without the semblance of right or authority. Under the rule applied in the Welchek case, 93 Tex. Crim. Rep. 271, the testimony would have been properly received. The express purpose of the legislature in passing Chapter 49, supra, was to reverse the rule applied by this court in the Welchek case, supra. The right of the legislature to do so is, in the mind of the writer, unquestionable. The precedents to that effect are without conflict. The legislature having, by constitutional methods, changed the rule of evidence, it was available to the accused and should have operated to exclude the evidence illegally obtained. Obedience to the statute

required its exclusion, and the trial court having failed to do so, it is incumbent upon this court, in the discharge of its duty, to reverse the judgment of conviction to the end that the accused may be tried in accord with the written law of the land.

The motion for rehearing is granted, the affirmance is set aside, the judgment of the trial court is reversed and the cause is remanded.

*Reversed and remanded.*

### CONCURRING OPINION.

All the members of this court concur in the conclusions expressed by Chief Justice Taft in the case of Carroll v. United States, 69 L. E. 543, announcing the principles which control officers in searching automobiles in the absence of a search warrant. The difference among the members of the court is whether the facts in the present case bring it within the rule announced.

The facts before us are very short, being included in three pages of typewritten matter. An analysis of them constrains me to concur with Presiding Judge Morrow in holding that the facts known to the officers before they made the search did not furnish "probable cause" to authorize the act.

Officer Glasscock testified that the first time he ever saw appellant was when he and another State Ranger (Ezell) saw appellant traveling west in a Dodge coupe; that they turned and followed him something like a mile; that when they stopped and asked to look in his car he said nothing; that witness was rather in front of the car and Ezell went to the car before he (Glasscock) did, and when he came back Ezell said, "It is loaded;" that they then opened the back end of the car and ascertained that it contained whiskey. There is nothing in the record which in any way indicates upon what Ezell based his statement that the car was "loaded." The evidence does not show any whiskey was exposed to view; on the contrary it appears from the record that it was in the back end of the car and that the officers could not see it until after they opened the back of the car. Ezell did not testify, therefore we do not have the benefit of the information upon which he based his statement that the car was "loaded." Officer Glasscock testified he had no warrant for appellant's arrest and says, "I just saw him and *suspected* he had some whiskey." If I understand the facts in the Carroll case they are entirely different from those here presented. The information in possession of the officers at the time they searched Carroll's car did furnish "probable cause" to believe that he was transporting whiskey. The search was not based on sus-

picion alone, but facts were stated which furnished grounds for belief on the officer's part that accused was violating the law. I feel that it would be of little benefit to again review the facts of the Carrol case. They are set out quite at length in the reported opinion and also in the opinions of my brethren. I have been unable to reach the conclusion that they furnish a parallel authorizing search in the instant case.

I therefore concur in the opinion expressed by Presiding Judge Morrow that the facts did not furnish "probable cause" to authorize the search of accused's car, and that therefore the evidence obtained as a result thereof was illegally received in evidence under Article 4a of our C. C. P., and Chapter 49, Acts of the Thirty-ninth Legislature, and that the judgment must be reversed.

HAWKINS, Judge.

### DISSENTING OPINION.

My brethren think the motion for rehearing should be granted in this case because the facts do not show that Mr. Glasscock had a reasonable belief that appellant's car was being used in illegally transporting intoxicating liquor, when same was searched by Mr. Glasscock without warrant. My brethren adhere to the conclusion announced in our original opinion that an automobile engaged in the illegal transportation of such liquor in the presence or view of the officer may be searched and seized without warrant, provided it appear that the officer so searching did so upon facts fairly supporting a reasonable belief on his part that such car was then being so used. To this I also adhere. I am unable to agree to the reversal of this case for reasons now set forth.

There are three bills of exception. One to the admission of the testimony of Mr. Glasscock; one to the admission of the testimony of Sheriff Stone, and a third too the refusal of a peremptory instruction to acquit, based on the alleged erroneous reception of the testimony of said two officers. Bills of exceptions Nos. 1 and 2 set out that the testimony of said officers was objected to only because they had no search warrant, and hence their search was in violation of Chapter 149, Acts of the Thirty-ninth Legislature; and the use of their evidence thus obtained was inhibited by Chapter 49 of the same acts, both said chapters being quoted in our original opinion. Said bills show affirmatively that before the officers testified, appellant on leave granted asked each of them if he had a search warrant, and receiving negative answers, made the objection referred to.

Necessarily the trial court acted upon the objection made, and necessarily this court upholds or reverses upon the objection appearing in the bill of exceptions. No rule is better settled than that requiring the objection not only to be stated, but also that there be before the trial court a showing of facts in consonance with and supporting such objection. Our original opinion affirms, and we all now agree, that the failure of the officers to have a search warrant was not only not a determinative fact, but that it made no difference at all in deciding the admissibility of the testimony of the officers. In fact, the opinion of my brethren on this rehearing is in no way made to depend upon the having of such warrant by Glasscock. So it is easily apparent that my first reason for declining to reverse this case, or to agree that it should be reversed on rehearing, is that the bills of exception do not raise, much less properly present, the issue of an objection made to a search upon probable cause without a search warrant. Our books are full of opinions of our illustrious predecessors, and of the court as now constituted, not only to the effect that testimony deemed objectionable must be pertinently objected to, but also that the objection made must be made in such terms as to raise the point and bring before the trial court the very issue he is called on to decide, and also that the truth of the objection made must be shown in the bill of exceptions itself. It is here asserted that neither bill of exceptions in this record shows that objection was made to the testimony upon the ground that the officers had no probable cause for believing the automobile engaged in illegally carrying liquor,—but that both bills present the unquestioned objection based upon a wholly different reason. It is also asserted that neither bill acts out facts upon which the trial court or this court could determine the issue upon which my brethren reverse this case. For myself I am unwilling to overturn in terms or in effect the unbroken rules of this court in regard to bills of exception, and to reverse this case upon a proposition not raised nor shown to be true by said bills of exception. I am at a loss to know how an objection stating only that the search was without warrant could be held to bring before the court the point that the real objection was that now decided by my brethren, viz., that there was no probable cause for the search made.

But my brethren say the facts before the trial court did not justify him in holding admissible the testimony of Mr. Glasscock, because such facts do not show that the officer had reasonable ground for believing the car of appellant was being used to transport intoxicating liquor. I may later discuss the suf-

ficience of the facts in this regard, but here observe that the trial court was only called on to pass on the objection made, and was not called on to pass on the sufficience of the facts to show probable cause. The correctness of the action of the court below is not to be tested by objections which might have been made. This has never, and I trust will never be the rule. The correctness of the rulings of the nisi prius courts are tested by the objection which was made and which appears in the bills of exception.

Passing the question of the failure of the bills of exception in this case, I briefly discuss the sufficience of the testimony as supporting a reasonable belief on the part of Mr. Glasscock that the car of appellant was transporting liquor, finding myself also unable to agree with the proposition that such testimony was not so sufficient.

My brethren discuss at length the case of Carroll v. United States, 267 U. S. 132; which held admissible certain testimony on the ground that the officers from whom the testimony was sought had probable cause for believing the car searched by them was engaged in illegally transporting liquor. Said opinion also lays down general rules for determining the issue when raised in cases of search without warrant of an automobile so engaged. With the general rules laid down I have no fault to find, nor am I in any opposition to the conclusion of fact reached in that opinion, but I am firmly convinced that the facts in the instant case afford better ground for the reasonable belief on the part of Officer Glasscock than did the facts in the Carroll case, supra, afford ground for such belief on the part of the officers in that case. That this may here appear, I give a summary of the pertinent facts in this case and in the Carroll case. In the Carroll case certain officers in September met the defendants at an apartment to which the latter came in a car; Carroll and Kiro agreed to get for the officers whiskey; they did not do so, and nothing in the record suggests that they attempted or intended to do so; the officers next saw them in the same car in October, but did not arrest them; they next saw the defendants in December in the same car, were of the belief that they had whiskey, stopped the car, searched it, and found a large quantity of liquor; held, the officers had reasonable ground for believing the car was being used for transporting liquor, and, therefore, had the right to search it without warrant. In the instant case, two officers patrolling a highway leading from Louisiana into Texas saw appellant alone in a coupe, and, their suspicions being aroused, they followed him about a mile and a

half and overtook him; they said they would like to search his car. He said nothing. Ezell, one of the officers, went to appellant's car, talked to him, then came back to Mr. Glasscock, the other officer, who was "kind of in front," and said to Glasscock, "It is loaded." The officers then went back to appellant's car, opened the rear of it, looked in and found 274 quarts of intoxicating liquor. Glasscock said from the smell of the liquor he knew it was whiskey. They arrested appellant, took him to where the sheriff was, who also looked in the car, saw and examined the liquor. My Brother Morrow has quoted at length in the opinion of the majority from the resume made by the United States Supreme Court of the testimony in the Carroll case. Far be it from me to criticise the great judge who wrote the opinion in said case either in his statements, reasoning or conclusions, but aside from the fact that the officers had met the defendants in that case in Grand Rapids in September at a place to which defendants came in the same car used by them on the day of their arrest, and that the defendants on that occasion agreed to get for said officers whiskey— the facts in the Carroll case afford no more ground for a reasonable belief that the car of Carroll et al. was being used for transporting liquor three months later, than do the facts in the instant case. When the officers met Carroll and Kiro in December on the highway and stopped them and searched their car, they had no information from any source that that particular car on that occasion had any liquor in it. Nor did they have any other reason for believing such fact other than that the two men in that same car had met the officers three months before and had engaged to get them liquor, which engagement was not kept. In the opinion of the Supreme Court certain geographical positions and public facts are stated as matters of judicial knowledge, which might be truly and correctly stated as applicable to the case at bar. The entire testimony given upon the witness stand in that case is set out in the dissenting opinion of Mr. Justice McReynolds, who concludes and asserts that the officers had only a suspicion when they searched Carroll's car. Be that as it may, in justice to my opinion here, I deem it but fair to say that in that case a disconnected circumstance occurring three months before, and which had no immediate relevance to the question as to whether Carroll had whiskey in his car, was relied on as affording ground for reasonable belief that his car was transporting liquor. The facts in the instant case are much more cogent. It may be debatable whether the fact that a man has been once convicted of trans-

porting liquor would justify an officer thereafter in stopping his car whenever he saw it on the highway; it may be doubted if a promise to get liquor for another, which is not fulfilled, affords substantial ground for belief that the car of the promiser is engaged in transporting liquor—but when a reliable person engaged to assist an officer, or acting with the officer, examines the car in question, talks to the occupant of the car, and comes to the searching officer and states to him that said car is loaded, and search of the car reveals the fact that it contains a large quantity of whiskey, this to my mind affords much stronger ground for reasonable belief on the part of the officer. We must remember that Mr. Glasscock gave the only testimony relative to what occurred at the time and place of the search of appellant's car. Mr. Ezell did not testify, nor did appellant. Glasscock testified relative to what occurred when they overtook appellant: "I was kind of in front, and Ezell was talking to him. Ezell went to the car before I did, and he came back, and I walked back to the car, and Ezell said, 'It is loaded.' * * * We opened the back end of the car and looked in it. * * * I never tasted any liquor in those bottles, but I could smell it. I am familiar with the smell of whiskey, and can testify it was whiskey." It must be borne in mind that Ezell and Glasscock were not searching for loads of wood or logs, but were officers seeking to apprehend violators of the liquor laws, and that Glasscock fully understood when Ezell came to him and told him that the car was loaded, what the latter meant. This statement was made by Ezell to Glasscock before the car was searched, and was certainly made by a reliable party. Whether Ezell obtained his information regarding the car from his conversation with appellant, or from examining the car, or from the odor which might have pervaded it, is not made to appear, but it is an undisputed fact that he returned from his conversation with appellant and examination of the car and made the statement, and to me it seems without room for debate to furnish far more satisfactory proof of the reasonable ground for belief on part of the officer whose testimony and acts we are discussing, than appears in the Carroll case, supra. The information received by the officer in this case was direct and indicative of the identical car and the very transaction. The source of Ezell's information was not revealed or explored on the trial. It is quite possible that the state did not care to explore it, and that appellant did not dare so to do. Also it is probable that in view of appellant's entire reliance upon the theory that the testimony was inadmissible because the officer had no search

warrant, he paid no attention to any other phase of the transaction and made no effort to show the officer had no probable cause.

My understanding of all the authorities and precedents, as well as my conception of the duty of this court, is that he who asserts error in the acts and rulings of the trial courts assumes the burden of manifesting same to the appellate court. Whether the error be of the charge or in relation to the admission of testimony, the complaint or exception shown in the record on appeal must make plain that at the proper time and in legal manner pertinent objections were made and exceptions taken.

I have devoted careful scrutiny to the bills of exception in this case and am entirely satisfied that they are not in conformity with the rules and precedents, and am as firmly convinced, quoting from the Carroll case, supra, that "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information, were sufficient in themselves to warrant a man of reasonable caution in the belief that intoxicating liquor was being transported in the automobile which they stopped and searched," and so believing, I am of opinion that appellants motion for rehearing should be overruled, and from the opinion of my brethren granting same and reversing this case, I most respectfully dissent.

LATTIMORE, Judge.