P. BIENCOURT AND ANOTHER V. F. J. PARKER.

By force of the constitutional inhibition against the holding of two lucrative offices by the same person at the same time, the acceptance of and qualification for a second office, incompatible with the precedent one, *ipso facto*, vacates the precedent office ; and neither a *quo warranto*, nor other amotion from the office thus vacated, is necessary before the vacancy can be supplied.

Under the State constitution of 1845, the offices of notary public and county clerk were incompatible ; and when a notary public was elected county clerk, and qualified as such, his office as a notary was thereby absolutely determined.

In support of exceptions to a deposition which purported to have been taken by a notary public, it was competent to show, by parol evidence, that the person taking it had previously ceased to be a notary by the acceptance of another office of profit ; and that fact being thus established, the deposition was properly suppressed. A single act of this character could not constitute him a notary *de facto*, and so give validity to the deposition.

The cases of Yancey v. Norris (ante. 40,) and Taylor v. Watkins, (26 Texas Rep., 688,) cited as establishing the principles by which the courts are to be guided in the presumption of grants from the State.

In the adjudications of this court, a distinction is recognized between presumptions of grants from the State, and presumptions of intermediate links in a chain of conveyance. The case of Daily v. Starr, (26 Texas Rep., 562,) cited as an illustration of the latter class of presumptions.

See this case for evidence held to be too meagre and indefinite to warrant either a presumption of a grant from the government to a public corporation, or a presumption that the title of the former owners had been divested out of them and acquired by the public corporation, in which it was attempted to show an outstanding title to the land in controversy.

In actions of trespass to try title, a discontinuance or abandonment of the suit by one of the plaintiffs, does not abate the suit, nor preclude a recovery by the other plaintiff ; nor will the fact that there is verdict and judgment for only one of the plaintiffs below, furnish a ground for the reversal of the judgment at the instance of the defendants.

In trespass to try title, mesne profits are recoverable as part of the plaintiff's damages, and it is immaterial that they are not called *damages* in the petition. Where the petition prayed judgment for a certain sum as damages, and also for mesne profits, and the verdict allowed as damages a larger sum than was claimed, *eo nomine*, in the petition, and the evidence showed that, inclusive of mesne profits, the verdict was not for a greater amount than the plaintiff was entitled to recover : *held*, that the verdict should not be disturb_d.

ERROR from Calhoun. Tried below before the Hon. Fielding Jones.

This was an action of trespass to try title and for damages, commenced in Cameron county on the 3d day of September, 1852, by Francis J. Parker and Miflin Kennedy, against Pierre Biencourt and Joseph Mante, as defendants. The property in controversy was a lot in Brownsville, and the buildings thereon.

This cause was continued from term to term until the Spring Term, 1855, when, upon a showing made by the plaintiffs in this and other cases involving titles to town property in Brownsville, the venue was changed to Nueces county. At the Spring Term, 1857, of the Nueces District Court, the judge presiding announced that he was disqualified from sitting in the case by reason of having been of counsel, and, in consequence, the venue was changed to the county of Calhoun.

The petition of the plaintiffs alleged their ouster by the defendants on the 1st of August, 1852, and averred that the defendants had "ever since continued in such wrongful possession, taking and receiving the fruits and profits of said land to the value of one thousand dollars by the year, and other wrongs then and there did, to the damage of your petitioners five hundred dollars." Their prayer was for "judgment for their damages aforesaid, mesne profits and costs of suit," and for possession, &c.

The defendants pleaded not guilty and title in themselves, and suggested valuable permanent improvements in good faith.

By a document filed August 13, 1857, the plaintiff Kennedy "authorized a discontinuance," having, as the document expressed, "parted with his interest in the subject matter of this suit." No order of the court appears on the subject.

The case came to trial on the 14th of August, 1857. It is not necessary to detail the deraignment of the plaintiff's title from Jose de la Garza, the original grantee, more explicitly than is done in the opinion.

The plaintiff Parker introduced the depositions of three aged Mexican witnesses as to the possession of the tract known as "El Espiritu Santo," which comprised the site of the city of Brownsville. These witnesses testified, in general terms, that it had, for

as long as they could recollect, been in the possession of Don Jose de la Garza, and those claiming under him by devise, descent and otherwise; but on cross-examination, they stated that portions of the tract, including the property in controversy, were, for some years previous to the occupation of the American army in 1846, in the possession and cultivation of one Miguel Salinas and others, who held it as tenants of the city of Matamoros; that the city of Matamoros, from the year 1830, had leased out these portions as part of the *ejidos*, or town lands; that any one who chose could lease from the city a certain amount of its *ejidos* at the rate of one dollar and a half per year, but no person could lease more than one allotment; but that the lessee had the right, with the assent of the city authorities, to transfer his lease to another, by which means the same person could obtain more allotments than one. None of the witnesses knew how long, previous to 1830, the city had leased out these lands, nor did they throw any light on the origin of the claim or possession of the city. The leasing of the lands was the only exercise of ownership by the city of which the witnesses made mention.

The defendant offered in evidence the deposition of Felipe Salazar, for the purpose of authenticating by him, as secretary of the ayuntamiento of Matamoros, certain copies taken from the archives of the city. This deposition purported to have been sworn to before Budd H. Fry, as a notary public, on the 23d day of May, 1857. The plaintiff objected to its being read, because "in law, and in fact, said Fry was not, at the time of taking said deposition, a notary public, nor authorized to take the same, which objections had previously been filed in writing." The plaintiff offered Israel Bigelow as a witness to prove that Fry was county clerk of Cameron county at the time the deposition was taken by him. The defendants objected to the admission of the testimony of Bigelow, "because no evidence of such fact was admissible, and particularly oral evidence." The court overruled the objection of the defendants, and admitted the witness, who testified that Fry was elected county clerk at the general election in August, 1856, and since that time had been acting as such county clerk, and had been generally recognized as county clerk of Cameron

county; that before said election he had been a notary public, but since his election witness did not know of his acting as a notary, except in taking the depositions in the class of cases of which this is one. On this proof the court excluded the deposition of Salazar, for the reason that Fry, by whom it was taken, was not a notary public, nor legally competent to take it. The defendants excepted.

In consequence of the rejection of Salazar's deposition, the document thereby referred to as containing copies from the archives of the municipal government of Matamoros, was also excluded. These copies do not appear in the statement of facts, but are described as follows: "The said rejected document purports to be a certified copy from the original archives of the city of Matamoros, containing many pages and various particulars concerning the establishment of that town and its *ejidos*, of which the first is a circular from the Governor of the State of Tamaulipas to all its inhabitants proclaiming the decree of its congress, establishing the town of Matamoros in January, 1820, and from that date until July, 1841, various proceedings of that government and that town, concerning the *ejidos* of that town, and its administration of business, connected with the land in question—the length of the document causing it not to be copied in this statement. But there is nothing in said document showing affirmatively a paper title, or grant of the land in question, issued to the city of Matamoros, or that the individual owners of the land in question were indemnified or compensated for said land, or that any final survey of the land was made before the 19th day of December, 1836, unless such facts could be inferred or presumed from the facts shown by the document or the evidence in the cause."

The court charged the jury that, according to the evidence, the plaintiff Parker had a good title to half of the property in controversy, and to half of the damages sustained by loss of rent, or other damages shown by the testimony; and that they should not regard the claim of the city of Matamoros set up by the defendants.

The jury returned a verdict in favor of the plaintiff Parker for an undivided half of the property, and assessed the damages

36*

at six hundred dollars. Judgment accordingly, and defendants' motion for a new trial overruled. Defendants sued out their writ of error.

A. B. Bacon, for the plaintiffs in error.

MOORE, J.—The exception to the deposition of Salazar, was properly sustained by the court. It was taken by H. B. Fry, who purported to act in the official capacity of a notary public. He had been at one time a notary public, but the parol evidence before the court, showed that he was subsequently elected and qualified as county clerk, and that for some time previous and at the taking of this deposition, he was well known and generally recognized as having accepted that office, and was in the open, public and noto-rious discharge of its official duties. The constitution declares, that "no person shall hold or exercise at the same time, more than one civil office of emolument, except that of justice of the peace." (Art. 7, sec. 26.) On the acceptance and qualification of a per-son to a second office, incompatible with one he is then holding, the first office is *ipso facto* vacated. (The People v. Carrique, 2 Hill, 93.) A resignation by implication will take place by being appointed to and accepting a new office incompatible with the for-mer one. It is said to be an absolute determination of the original office, and leaves no shadow of title to the possessor; so that nei-ther *quo warranto* nor amotion is necessary before another may be elected. (Rex v. Trelawney, 3 Burr., 1616 ; Milward v. Thatcher, 2 T. R., 87 ; Willcock on Municipal Corp., 240, 617 ; Ang. & Am. on Corp., 255.)

Having ceased to be *de jure* a notary public for some time pre-vious to taking this deposition, it can not be pretended that this single act, which is all that he is shown to have attempted to do in this capacity, will constitute him a notary public *de facto*. In Burke v. Elliott, (4 Ind. Law, 355,) it is said by the court, "The acts of officers *de facto*, are as effectual, as far as the rights of third persons or the public are concerned, as if they were officers *de jure*. What shall constitute an officer *de facto*, may admit of doubt in different cases. The mere assumption of the office by

performing one or even several acts appropriate to it, without any recognition of the person as officer by the appointing power, may not be sufficient to constitute him an officer *de facto.* There must be at least some colorable election and induction into the office *ab origine* and some action thereunder, or so long an exercise of the office and acquiescence therein of the public authorities, as to afford to an individual citizen a strong presumption that the party was duly appointed; and therefore, that any person might compel him, for the legal fees, to do his business, and for the same reason was bound to submit to his authority, in such official capacity."

The charge of the court, we are of the opinion, does not require a reversal of the judgment. By an agreement of the parties, read in evidence upon the trial, it was admitted that a grant was made by the officers of the king of Spain, in Mexico in the year 1781, to Jose Salvador de la Garza, of a tract of land known as El Espiritu Santo, "that this tract included the lands now sued for, and was in the year 1802, and thereafter, vested by devise and descent in Maria Francisca Cabasos," under whom by other evidence the plaintiff in the court below showed title. The only evidence upon which the defendants below, who are plaintiffs in error, relied to resist or rebut this apparent right to a recovery, was the parol testimony of two or three witnesses, to the effect that the city of Matamoros from the year 1830 until the arrival of the American army upon the Rio Grande in 1846, had claimed and exercised jurisdiction over the *locus in quo* as a part of the *ejidos* of said city, and that it had during said time been in the possession of one Miguel Salinas, who leased it as one of the labors (which the city was accustomed to let within its *ejidos* to such parties as might desire the same,) at the annual rent of one dollar and fifty cents. Although to some extent every case must stand upon its own peculiar facts, the principles upon which the courts are to be guided in the presumption of grants, may be said to be now well established by the former decisions of this court. (See Taylor v. Watkins, 26 Tex., 688; and Yancy v. Norris, ante, page 40.) The distinction, however, between the presumption of a grant from the government of a part of the public domain, and of the intermediate links in a chain of conveyance has not been overlooked by the

court.   The practical application of the latter doctrine, will be found illustrated and applied in the case of Daily v. Starr, (26 Tex., 562,) and the earlier decisions there cited.   It does not appear from the record, whether the plaintiffs in error relied upon the evidence before the court below upon this point, to authorize the presumption of a grant from the State to the city of Matamoros of the land claimed as the *ejidos* belonging to the city; or whether they relied upon it as presumptive evidence of a divestiture, either by private or judicial act, of the title of the parties claiming under the grant from the king of Spain, under which the defendant in error makes title in favor of the city, and for the establishing of its *ejidos* for the benefit of its inhabitants.   Unquestionably the evidence in the case would not have authorized a presumption of a grant by the State.   Nor in our opinion are sufficient facts shown to establish in this manner intermediate links in a chain of conveyance, if any such were alleged, and thus serve to pass the pre-existing title under the grant from the government. The testimony is loose and indefinite.   It is not shown why other testimony of a more satisfactory character was not, or could not be adduced.   The facts testified to, are too few and meagre in their character to authorize the presumption of such grave consequences. The evidence at best, is but the imperfect recollection of a few ignorant, and it may be but partially informed persons about matters which it seems should have been shown by public acts remaining in the archives of the country, or abundantly and conclusively established as matters of general notoriety.   If the law authorized the divestiture of the title of the original grantees of the land in favor of the city of Matamoros, it prescribed regulations by which this should have been done.   The jury were not authorized to presume these fundamental acts from the few isolated manifestations of a claim of title, which were shown by the testimony before them.

Under the liberal practice which has been recognized in our judicial system, it can not be said that a discontinuance or abandonment of his suit by one of the plaintiffs, in actions of this kind, will abate the entire suit, or preclude a recovery by the other plaintiff.   Nor will the fact that there is only a verdict and judg-

ment for one of the plaintiffs below, on the proof of his title, furnish a ground for the reversal of the judgment, at the instance of the parties against whom it is rendered.

The petition alleges the use and occupation of the premises in dispute, to be of the yearly value of one thousand dollars, and also charges damages by reason of the wrongful and forcible possession taken thereof by the defendants. The prayer for judgment in the petition embraces both of these grounds. Mesne profits are recoverable in actions of this kind, which are brought as well to try title as to recover damages, as a part of the plaintiff's damages. That they are not so called in direct terms in the petition, is no reason why they should not be thus denominated in the verdict, and it should not on this account be set aside, when the testimony, as in this case, shows the amount of the money verdict is not larger than the plaintiff was entitled to recover.

There are no other questions in the record which need be considered. The judgment is affirmed.

Judgment affirmed.