E. J. MURRAY ET AL. V. THE STATE.

No. 16149.  Delivered November 22, 1933.
Rehearing Denied January 31, 1934.
Reported in 67 S. W. (2d) 274.

The opinion states the case.

*J. A. Collier, Gordon O. McGehee,* and *M. L. Pepper,* all of Houston, for appellant.

*K. C. Barkley* and *Percy Foreman,* both of Houston, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is extortion; the punishment, confinement in the penitentiary for three years.

It was alleged in the indictment that appellants "were then and there duly qualified and acting deputy constables of Precinct No. 2 of Harris County, Texas." Appellants insist that a deputy constable is not an officer within the contemplation of article 365, Penal Code, 1925. We quote the article: "If any officer or person authorized by law to demand or receive fees of office, shall willfully collect for himself or for another any fee or fees not allowed by law, or any money as a purported fee for a service or act not done, or any fee or fees due him by law in excess of the fee or fees allowed by law for such service, he shall be confined in the penitentiary not less than two nor more than five years for each offense." Article 366, Penal Code of 1925, defines another phase of extortion. Article 367, Penal Code of 1925, reads as follows: "The two preceding articles apply to all persons holding any office to which fees are attached, and to the heads of the departments of the government in whose offices fees may be charged."

In article 256, Penal Code of 1895, the persons amenable to the statute defining extortion were designated as "any officer authorized by law to demand or receive fees of office, *or any person employed by such officer.*" The italicized words are not in the present statute. Their omission from the amendatory act of 1907 is not deemed to have removed deputy constables from the operation of the statute. See General Laws of Texas passed at the Regular Session of the 30th Legislature, p. 307. At common law the crime of extortion may be committed only by an officer. 25 Cor. Jur., p. 234. Article 256, supra, went further and made amenable to prosecution for extortion persons other than officers when they were employed by an officer authorized by law to demand or receive fees of office. Without the language *"or any person employed by such officer"* the statute was sufficient to embrace a deputy constable. Under the circumstances we do not think the omission of the italicized words from the statute should be taken to indicate that the

Legislature intended to confine the operation of the statute to the principal officer, and remove from its operation the deputy of such officer.

Again, the opinion is expressed that article 367, Penal Code of 1925, does not restrict the operation of the statute to the principal officer. Article 367 was in the Penal Code of 1895. If it should then have been given the effect appellants contend for it would have contradicted that provision of article 256, supra, making the said article applicable to *"any person employed by such officer."* We think article 367 describes the office to which the officer or person is attached, and does not undertake to restrict the operation of the statute to the principal officer. A constable holds an office to which fees are attached. The law clothes deputy constables with the power and authority of the constable. Wilson v. State, 36 S. W. (2d) 733. It is by virtue of the acts of the deputy constables, as well as those of his principal, that fees are demanded and collected. We are unable to escape the conclusion that he is, within contemplation of the statute, a person holding an office to which fees are attached.

Appellants earnestly insist that the evidence is insufficient. The indictment was predicated upon the collection of the sum of three dollars as a fee purportedly earned in serving a subpoena on the three appellants and one C. H. Ohmburger in the case of Moaten Norris, who was charged by complaint with being a vagrant. In the traverse clause of the indictment it was averred that the fee was collected before any subpoena had been issued and after Moaten Norris had paid her fine; and, further, that the service was not performed for which the fee was charged, but, on the contrary, the subpoena was executed and placed in the papers for the purpose of "covering up the extortion." The proof on the part of the state was, in substance, as follows: Armed with a search warrant, appellants went to the home of Moaten Norris, a colored woman, and instituted a search for intoxicating liquor. A party was in progress, several negro men and negro women being present. Appellants discovered a half-gallon of whisky in the house. They advised Moaten Norris that if she did not plead guilty to a charge of vagrancy and pay a fine they would send her to the penitentiary for possessing intoxicating liquor for the purpose of sale. They told her if she would plead guilty to the vagrancy charge and pay her fine and would have some of the other women in the house to plead guilty, they would not prosecute her for possessing the liquor. Upon being asked by Moaten Norris what the fine would be, they told her it was seventy-

five dollars. She advised them that she only had nineteen dollars. They asked her if she could get forty-five dollars. She borrowed ten dollars from her nephew and got eleven dollars from another man, and five dollars from her niece. She was further advised by appellants that five of the women would have to plead guilty, but that if she would pay the fine for all five of them they would let the others go. It was finally agreed she was to pay forty-five dollars for herself and two other women. She was carried to the office of the justice of the peace about 11 o'clock at night by appellants, all of them riding in the same car. When they reached the office of the justice of the peace, appellants gave her three slips of paper to sign. She was advised to sign her name to one of the papers and the names of the other two women, who were not present, to the other slips. This she did. Before signing the papers she paid to appellant Murray the forty-five dollars. He put the money in his pocket. On the way from her house to the office of the justice of the peace the parties did not stop, but went directly to the place where she paid the money and signed the slips of paper. Included in the amount collected was the three dollars upon which the indictment was predicated. The state introduced in evidence a subpoena for the appellants and one C. H. Ohmburger which appeared to have been executed on the day Moaten Norris paid her fine, and had endorsed on the back that it was executed on that day. Whether executed as to all of the parties was not indicated. The subpoena bore the constable's name. However, he did not serve the subpoena. The name of no deputy constable appeared thereon. The justice of the peace was not present at the time the money was collected and at the time the pleas of guilty were entered. There was nobody present in the office of the justice of the peace but Moaten Norris, the appellants and one Prince Garrett. Prince Garrett does not appear to have been an officer. The testimony excludes the idea that anyone by the name of C. H. Ohmburger came to the office of the justice of the peace while Moaten Norris was there. The evidence is deemed sufficient to establish the averment that a subpoena was never served on the witnesses named therein. Appellants knew when they left the house with Moaten Norris that she had the money and would deliver it to them at the office of the justice of the peace. There was no necessity for the issuance of a subpoena. There was no opportunity to serve one.

Failing to find reversible error, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON APPELLANT'S MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—In their motion for a rehearing the appellants renew their contention that a deputy constable is not amenable to prosecution under the provisions of article 365, P. C. It is conceded by the appellants that article 256, P. C. of 1895, comprehended deputies, but it is urged that the Legislature, in passing the amendatory Act of 1907, restricted the operation of the statute to the principal officer. This contention is predicated upon the omission from the amendatory Act of the language hereinafter mentioned. It is deemed proper to review the history of the legislation involved in the light of the definition of extortion at common law. We quote from 19 Tex. Jur., p. 482, as follows: "At the common law extortion is defined as the unlawful taking by an officer, by color of his office, of any money or thing of value that is not due to him, or more than is due or before it is due."

Article 256, P. C. of 1895, reads: "If any officer authorized by law to demand or receive fees of office, or any person employed by such officer, shall wilfully demand or receive higher fees than are allowed by law, or shall wilfully demand or receive fees not allowed by law, he shall be punished by a fine not less than twenty-five nor more than one hundred dollars for each offense."

We quote article 257, P. C., 1895: "The preceding article applies to all persons holding any office to which fees are attached, and to the heads of the departments of the government in whose offices fees may be charged."

In the Acts of 1907, page 307, is found an amendment to article 256, which reads as follows:

"If any officer or person authorized by law to demand or receive fees of office, shall wilfully collect any fee or fees due him by law in excess of the fee or fees allowed by law for such service or for fees not allowed by law, he shall be punished by imprisonment in the State Penitentiary not less than two nor more than five years for each offense."

Article 365, P. C., 1925, under which the prosecution proceeded, provides: "If any officer or person authorized by law to demand or receive fees of office, shall wilfully collect for himself or for another any fee or fees not allowed by law, or any money as a purported fee for a service or act not done, or any fee or fees due him by law in excess of the fee or fees

allowed by law for such service, he shall be confined in the penitentiary not less than two nor more than five years for each offense."

It is observed that at common law the crime of extortion may be committed only by an officer. 25 Cor. Jur., p. 234. The language employed in article 256, P. C., 1895, is deemed to have extended the common-law definition and made amenable to prosecution persons other than officers. Under the terms of said article, *any person employed by an officer*, authorized by law to demand or receive fees of office, was made amenable to prosecution for extortion. It would follow that the omission of the italicized words from the amendatory Act of 1907, and from the present statute should not be taken to affect the question to be solved. This is the question: Is a deputy an officer authorized by law to demand or receive fees of office?

It is well settled that a deputy sheriff is a public officer. Towns v. Harris, 13 Texas, 507; 46 Cor. Jur., p. 1062. He is invested by law with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public. Mechem, Pub. Off., sec. 1; State v. Bus (Supreme Court of Missouri), 33 L. R. A., 616. Deputy constables are provided for by law and qualify in the same manner as deputy sheriffs. Article 6879, Revised Statutes, 1925; article 6869, Revised Statutes, 1925. They are also vested by law with some portion of the sovereign functions of the government, to be exercised by them for the benefit of the public. They are public officers clothed with the power and authority of their principals. Wilson v. State, 36 S. W. (2d) 733. However, appellants insist that article 367, P. C., 1925, makes evident the intention of the Legislature to restrict the operation of article 365 to the principal officer. We quote the article first mentioned: "The two preceding articles apply to all persons holding any office to which fees are attached, and to the heads of the department of the government in whose offices fees may be charged."

It is contended by appellants that a deputy constable holds no office to which fees are attached, but on the contrary, receives for his services a stated salary. From this it is argued that a deputy is not an officer authorized by law to demand fees of office.

Every duty imposed by statute on a specified officer is regarded in law as performed by him, whether actually performed by him or his authorized deputy, and a statutory provision for compensation for such officer fixes the amount to be paid regardless of who performs the service. 46 Cor. Jur., p. 1063.

The constable receives the fees provided by statute whether he performs the service himself or whether it is performed by his deputy. The fee allowed by law is the same whether he or his deputy performs the duty to which the fee is attached. The compensation of the constable is derived directly from the fees collected by himself and deputies. Indirectly the compensation of the deputy is received, in the form of salary, from fees. Article 3902, Revised Statutes, 1925. That such fees are attached to the office held by the deputy constable for the benefit of the constable, as well as himself, seems obvious. Under the statute, the collection of an unauthorized fee for another is inhibited, as well as the collection for himself. Moreover, the statute is not limited to the officer entitled to receive the fee. The language employed is "authorized to *demand* or *receive*." In serving process and indicating the fee due for the service, it would seem that the deputy is demanding the fee for another, namely, the constable. Clearly it would appear that the deputy holds the office to which fees are attached.

The fact that Title 61, Revised Statutes, 1925, relating to fees of office, employs the official name of the principal officer would not appear to affect the question under consideration. Said title prescribed a schedule of fees. As heretofore stated, such fees are not affected by the character of the officer performing the duty. They are the same whether the service is rendered by the principal officer or his deputy.

The motion for rehearing is overruled.

*Overruled.*