**McDONALD et al. v. CITY OF DALLAS et al.**
No. 11656.

Court of Civil Appeals of Texas. Dallas.
Jan. 27, 1934.

Rehearing Denied March 17, 1934.

Claud C. Westerfeld and Harold H. Young, both of Dallas, for appellants.

Hugh S. Grady, City Atty., W. Hughes Knight, A. J. Thuss, and H. P. Kucera, all of Dallas, for appellees.

BOND, Justice.

This suit was instituted by appellants (six in number) against the governing authorities of the city of Dallas, to compel them to reinstate appellants as policemen and, in alternative pleas, to recover from the city of Dallas their salaries for the unexpired terms of their respective offices. As their respective claims involved the same question, and to avoid a multiplicity of suits, appellants each joined in the one suit. Appellees raise no issue as to the misjoinder of causes and parties.

For cause of action, appellants allege, in substance, that, prior to the adoption of the present charter of the city of Dallas (1931), each was duly appointed and qualified as a regular policeman of the city, and had been actively and continuously engaged as such officer from nine to fourteen years, under the existing provisions of said charter (article 14, § 34), authorizing their tenure in office, during good behavior, and removal for cause; that on May 1, 1931, the city charter was amended, creating a civil service board of three members, to promulgate rules and regulations governing the conduct and efficiency of civil service employees, providing additional grounds for removal, and creating a special tribunal to discharge them; that the governing authorities, without fault on appellants' part and without assigning any reason therefor, illegally discharged them, have persistently refused to allow them to perform any duties as such officers, and the city of Dallas has declined to pay their salaries for the unexpired terms of their offices. Appellants further alleged that they secured their positions by appointment from the city manager, acting under the provisions of the present charter, and can only be removed from office by charges duly presented and a trial before the tribunal provided by said charter amend-

ments; that no such charges have been preferred, no such trial had, nor have they been guilty of any misconduct which would justify their removal.

To this petition, appellees interposed a general demurrer, plea to the jurisdiction, numerous special exceptions, pleaded general issues, and specially alleged that the discharge of appellants was, in all things, done under the existing provisions of the city charter and its amendments. The pleadings are extremely lengthy, and we do not deem it essential to set them out, other than in a most general way. The conclusion we have reached is based upon our construction of the city charter and its amendments, as affecting the rights of the parties. The issues under consideration are whether appellants' positions come within the purview of the civil service amendments to the city charter, and, if so, whether their discharge by the chief of police, based on a deficiency rating of the civil service board, is effective, when a trial on the charges was demanded before an independently created tribunal.

The agreed statement of facts reveals that appellants were peace officers in the police department of the city, at the time of the civil service amendments to the city charter; that on October 1, 1932, they were reappointed, by the governing authorities of the city, for the fiscal year beginning October 1, 1932, and ending September 30, 1933; that the city manager issued to them warrants of appointment, evidencing their tenure, power, and duties, and providing that such appointments are subject to the civil service and other provisions of the city charter, to the ordinances of the city of Dallas, and the laws of the state of Texas, and were their commissions for the periods cited in the warrants. The civil service amendments were adopted by said city, a civil service board appointed, and the board adopted rules and regulations for the government of the civil service employees; that each of the appellants failed below the grades of efficiency rating required by the rules and regulations, and, after a hearing, the civil service board notified the city manager of such failures, whereupon, the chief of police, on May 13, 1933, addressed a communication to each of the appellants, as follows: "I am advised by the Civil Service Board, in a communication addressed to City Manager John N. Edy and referred to me, that they have carefully examined your efficiency reports and find that you have fallen below the standard for service in this Department; that they have spent many hours in investigation of information from various sources relative to the several reasons given for your failure and find nothing to indicate other than a fair and impartial estimate of your services. Therefore, under Section No. 124 of the City Charter, in view of the premises, your separation from the service becomes effective immediately."

Immediately upon receipt of this communication, appellants addressed written motions to the civil service board, city council, and chief of police, demanding a written statement of the reasons for their discharge, and demanded a public hearing before the trial board, which demands the governing authorities of the city of Dallas—the civil service board, city manager, and chief of police—refused; and on account of such refusal, since May 13, 1933, appellants have been separated from the service of the city as policemen, and at the time of the attempted discharge appellants were receiving the following monthly salaries: J. W. Hitt, $132.50; J. L. Dyer, $132.50; C. M. McDonald, $127.50; B. E. Nelson, $127.50; J. W. Crowley, $127.50; A. E. Harrell, $127.50.

Under the charter provisions involved (section 66), the police department is composed of the chief of police and such other officers, patrolmen, and employees as the city manager may determine, and (section 67) the members of the department, in office at the time of the civil service amendments, were not required to submit to examinations, but "shall continue in service, subject to the provisions of the charter, ordinances of the city and rules and regulations of the Civil Service Department." The amendments adopted to the charter provide that the governing body (section 114) of the city shall appoint a civil service board to draft, amend, and enforce a code of rules and regulations (section 117) governing the appointment and employment of officers and employees holding positions in the "classified service," based upon "merit, efficiency, character and industry," and said board "shall make investigations" and regulate the "reduction of force of employees and in what order they shall be dismissed" concerning the enforcement and effect of the civil service section of the charter and of the rules adopted under the powers granted. The amendments provide, in effect, that the position of policeman comes under the term "classified service" (section 116) and is subject to the civil service examination, excepting those civil service employees (section 125) who have held their positions for a consecutive period of three months or more, prior to the time of the inauguration of the civil service; and, further, that those holding such positions shall be retained until discharged in ac-

cordance with the charter amendments. The charter amendments (section 121) provide that such officer or employee in the "classified service" may be removed by the city manager, or head of the department in which he is employed, after the three months probation period has expired, specifically limiting such discharge to the right of such officer or employee to demand a written statement of the reasons for the discharge, a public hearing, and trial before a board (section 122), composed of two members of the governing body of the city and the chairman or vice chairman of the civil service board, designated as a trial board, and created for the sole purpose of determining the truthfulness of the charges made against such officer or employee. The amendments further provide that said trial board shall have final jurisdiction on all appeals, and that the decision of the majority of said board shall be final.

Thus, it is seen that the city charter and its civil service amendments make provision for the proper discharge of civil service officers and employees, who were in the service of the city at the time of the adoption of the amendment, authorizing their removal under the rules and regulations promulgated by the civil service board, and limiting their right of appeal by the provisions of the charter amendments. Where the civil service board finds such officer deficient, it becomes the duty of said board, under the specific mandate of the charter, to report such deficiency to the city manager or to the chief of the department, in which such discharged officer or employee is in service, and then it becomes the duty of said manager or chief to discharge such officer or employee, allowing him a review on appeal and hearing before an independent trial board.

The civil service board, in dealing with such officers or employees, acts in the capacity of an inquisitorial body, to hear and determine their standard of conduct and efficiency, basing their action upon the code of rules and regulations promulgated by such board, and, if the officers or employees are found deficient, it becomes the board's duty to prefer deficiency charges, to the city manager or head of the department, as grounds for removal, suspension, or reduction in grade, as it may determine.

We are of the opinion that the purpose of the civil service provisions of the charter is to fix a grade below the minimum standard of conduct and efficiency as a ground for the discharge of officers or employees holding positions under the "classified service." In the light of such amendments, policemen come under this class, and are amenable to the code provisions and the protection afforded them by the charter. The charter provides distinct grounds and methods for their discharge; the chief of police (section 71) is empowered to suspend any officer or employee in the police department for "incompetence, neglect of duty, immorality, drunkenness, or failure to obey orders given by the proper authority," and the chief of police is required to certify the fact, together with the cause for the suspension, to the city manager, who hears the complaint and determines the discharge; and under section 123 provision is made for three or more citizens to prefer written charges of "misconduct" before the civil service board; such charges shall be heard by said board, and, if found meritorious, said board shall file charges with a trial board. The trial board only determines the discharge. Thus, we have the charter providing the specific grounds for the discharge of officers: (1) Incompetence, neglect of duty, immorality, drunkenness, or failure to obey orders; (2) misconduct; and (3) failure in grade below the minimum standard of conduct and efficiency. In each instance, before such ground is enforceable, discharging such officer or employee, if demand is made, a public hearing is provided and a final determination of the issue, or issues, required by an independent tribunal. In the first instance, the chief of police prefers the charge, and the city manager effects the discharge; in the second instance, three or more citizens make the complaint, the civil service board prefers the charge, and a trial board determines the issue; and in the third instance, the one under consideration, the deficiency grade furnishes the ground, the civil service board prefers the charge, the city manager or chief of police affects the discharge, subject to the action of a trial board on appeal. The efficiency of the public service is thereby maintained, and the rights of the officers are free from the capricious discharge by the city governmental body and escapes the bias or prejudices of a superior officer.

Appellees contend that section 124 of the city charter, providing that "it shall be the duty of the Board to fix a minimum standard of conduct and efficiency for each grade in the service, and whenever it shall appear from the reports of efficiency made to the said Board, for a period of three months, that the conduct and efficiency of any employee has failed below this minimum, that employee shall be called before the Board to show cause why he should not be removed and if, upon hearing, no reason is shown sat-

isfactory to the Board, he shall be removed, suspended or reduced in grade, as the Board shall determine," clothes the civil service board with plenary power to discharge a policeman without a public hearing and trial. We do not so construe the quoted section. The board has the power to determine whether such employee shall be "removed, suspended or reduced," for his failure below the minimum standard of conduct and efficiency, fixed by the board, but such removal, suspension, or reduction is effective only by a trial board, when an appeal is demanded. The plain provisions of the charter specifically guarantee to such officer or employee the right to an appeal, and the civil service commission, or the city manager, or the head of the department cannot, by a summary order, abridge, abrogate, or take away such appeal and the incidental rights of the discharged officer or employee for a hearing on charges preferred; his rights are fixed by the organic law of the city.

■ Civil service rules and regulations must be liberally construed in favor of the public good, to give effect to efficiency of public service, not inimical to the rights and privileges of the holders of public offices.

■ A policeman of an incorporated town or city is an officer (C. C. P. art. 36), and as such his term of office cannot continue longer than two years, under limitation of the general provisions of the State Constitution (Const. art. 16, § 30). Kimbrough v. Barnett, 93 Tex. 301, 55 S. W. 120; State v. Catlin, 84 Tex. 48, 19 S. W. 302. The city charter, however (section 66) empowers the city manager to determine rules and regulations for the government of the positions, and, under such delegated authority, he may appoint such officers for a limited period of time and issue to them (section 67) warrants of appointment. The city manager thus having issued to each of the appellants a commission, designating the tenure of their respective offices for one year, it must be conceded that the duration of each office extended for the time specified in the commission. Appellants were discharged through an unauthorized agency, and the effort of the civil service board and chief of police to oust them before the expiration of their terms of office, and the city authorities' refusal to grant their appeals for trial before the special tribunal provided by the city charter, are in direct contradiction of an expressed charter provision. The effect of the officers' demand for charges preferred and an appeal and hearing before the trial board was to stay the action of the civil service board and the chief of police, and to retain the officers in their positions until a decision could be pronounced by said board. The decision not having been reached by said trial board, because of the action of the governing authorities of the city, the attempted discharge was not effective. Therefore, we are of the opinion that appellants were entitled to serve the city of Dallas as policemen, and receive the salaries incident to their offices for the time designated in their warrants of appointment.

Plaintiffs were appointed, qualified, and served until May 13, 1933, when they were illegally discharged. The trial court refused to award the writ of mandamus against the governing authorities of the city, and, the tenure of their positions having expired before their appeal reached this court, the mandatory feature of this appeal has become moot. Appellants had four months and seventeen days to serve the city under their respective commissions as policemen, at a salary of $127.50 each per month, excepting those of appellants Dyer and Hitt, whose salaries were $132.50 each per month.

We conclude that appellants are entitled to recover of appellee the city of Dallas the amount of their salaries for the unexpired term of their respective offices; therefore the judgment of the lower court is reversed, and judgment here rendered against the city of Dallas in favor of J. L. Dyer for the sum of $602.65, J. W. Hitt for the sum of $602.65, C. M. McDonald for the sum of $579.90, B. E. Nelson for the sum of $579.90, J. W. Crowley for the sum of $579.90, and A. E. Harrell for the sum of $579.90, with 6 per cent. interest on the several sums awarded each appellant, and all costs of suit, both in the court below and in this court.

Reversed and rendered.

On Motion for Rehearing.

Appellee city of Dallas challenges our conclusions that appellants were illegally discharged and entitled to a hearing before a trial board; and further insists, for the first time, in its motion for rehearing, that appellants did not meet the charter requirements, by filing notice of appeal within the time prescribed, and asks for a further finding of facts on questions raised in its motion.

Further reviewing the record, we find that appellants were discharged by the chief of police, and the city council, on advice of its legal department, refused to accord them an appeal to the trial board. The action of the chief of police is based on the deficiency rat-

ing found by the civil service board, and that of the city council on the assumption that the officers were discharged by said board, in pursuance of section 124 of the charter; and that the charter vests the final authority in such cases in the board, without an appeal.

■ On April 27, 1933, appellants were accorded a hearing before the civil service board, on efficiency reports, under the provisions of section 124 of the charter. However, the board's action on such hearing is not disclosed in the record. Under that section, the board is delegated the authority to determine the removal, suspension, or reduction in grade of officers and employees included in the classified civil service, subject, as we conceive their rights to be from other provisions of the charter, to an appeal to a trial board. Thus, in the absence of proof, we are of the opinion that it cannot be assumed that the board's action was adverse to appellants.

■ On May 4, 1933, the secretary of the civil service board, in a letter addressed to the city manager, stated that the board had found appellants' efficiency grades below the standard, and that it had determined their removal from the service; however, the secretary's letter, as we view the record, finds no support in the minutes of the board, and is not required by the charter. If the board did so find and decree (which we are unable to conclude as a fact), then appellants were not advised of its conclusion, and we fail to see how the secretary's letter could be deemed to reflect the action of the civil service board, or to be the basis of either actual or constructive notice to appellants. We believe that it was the intention of the framers of the charter, founded upon principle of right and justice, to accord discharged officers and employees with notice of the action of such board, and the grounds on which the judgment is based in discharging them.

On May 13, 1933, in the letter addressed to appellants, copied in hæc verba in our original opinion, the chief of police gave appellants notice of their discharge, stating that their "separation from the service becomes effective immediately," basing his action on recited deficiency reports made to the civil service board. This is the only evidence as to the source of, and ground for, the discharge of appellants, and evidently is the basis for the city council's refusal to pay their salaries for the unexpired terms of their offices.

■ On the contention that appellants have not perfected an appeal, within the terms of the charter, in that they did not file notice of appeal with the trial board, within ten days after being notified of their discharge, it must be observed from the statement of facts that appellees agreed that appellants did file the notice, the date of such filing not being disclosed; and that, on May 27, 1933, the city attorney addressed a letter to members of the city council, in which he recited the filing of such notice. Thus, we conclude that the governing authorities received the notice, reverted same to its legal department, that an investigation was made and concluded on May 27, 1933. These evidentiary circumstances lead, we think, to the conclusion that the notice was filed within the time provided by the charter; or, at least, in the absence of proof to the contrary, the presumption may be indulged in favor of the timely filing of such notice. This presumption is accentuated by appellants' petition reciting May 17, 1933, as the filing date, and appellees' failure to raise the issue, by pleadings or evidence.

■ We further find that the charter makes no specific provisions as to whom the notice of hearing and appeal shall be made. The trial board is not a standing functionary; its creation is affected by the city council, appointed from its membership, and the chairman, or vice chairman, of the civil service board (section 122) only, as a contingency arises; thus, in our opinion, the filing of the petition and the demands for trial called for the action of the city council to appoint the trial court. Thus, we think the filing of the petition with the city council perfected the appeal.

■ The right of the chief of police to suspend or discharge a subordinate is predicated only on charges of "incompetency, neglect of duty, immorality, drunkenness, or failure to obey orders given by the proper authority." Section 71. It must be observed that none of these charges are assigned as grounds for appellants' discharge. The chief of police effected their discharge, as we conceive, on the ground that appellants had fallen below the standard of service, fixed by the rules and regulations of the civil service board. In our opinion, the city charter provisions do not delegate such authority to the chief of police; such is only cognizable by the civil service board. Thus, we have here the chief of police, in discharging appellants for deficiency ratings, assuming the provisional authority delegated only to the civil service board.

In recognition of their charter rights, appellants protested such discharge, demanded

specification of charges and a public hearing before a trial board. A written demand that these rights be accorded them was presented to the city council, city manager, and chief of police, the only authorities delegated by charter provisions to deal with their situation. These rights were denied to appellants, thus depriving them of a fixed tenure and emoluments of office, without the purview of the charter provisions.

The importance of the litigation as to the rights of the city to give effect to efficiency of public service and the responding duties of city policemen and their rights to hold office and receive the emoluments agreeably to the organic law of the city has led us to again review the record and the able briefs of the parties. However, we fail to see any reason for reversing our conclusions heretofore reached, feeling that appellants have not been accorded rights guaranteed to them, and that they have been illegally deprived of their offices, to their hurt and damage.

Appellees' motion is overruled.