SHERMAN IRWIN V. THE STATE.

No. 22568. Delivered February 16, 1944.

The opinion states the case.

Percy Foreman, of Houston, and Otis Rogers, of Fort Worth for appellant.

Dan W. Jackson, Criminal Dist. Atty., and A. C. Winborn, A. H. Krichamer, King C. Haynie, and O'Brien Stevens, Asst. Criminal Dist. Attys., all of Houston, and Spurgeon E. Bell, State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

The offense for which appellant stands convicted is that of operating a policy game (Art. 619, P. C.) ; the punishment, confinement in the State penitentiary for a term of two years.

The mode, manner and method by which the policy game was operated is, in all material aspects, similar to that shown in Cagle v. State, No. 22,490, this day decided, wherein the facts were held sufficient to support a conviction. No reason is perceived to state the facts here.

The pivotal question presented for determination relates to introduction of evidence obtained as a result of the search of appellant's automobile and residence.

Under and by virtue of two separate search warrants, each addressed to the "Sheriff or any Constable of Harris County," directing the search of appellant's automobile and residence, evidence material to the State's case and incriminating the appellant with the offense charged was obtained and used by the State upon the trial of this case.

Among objections to the introduction of such testimony, it was urged that the officers executing the search warrants and making the searches were not authorized to do so, and that, as a consequence, the searches were illegal and were in violation

of both the State and Federal Constitutional provisions prohibiting unreasonable searches and seizures.

At the time the automobile was searched, it was parked within six or eight feet of the entrance to the garage, on the premises occupied by appellant's residence, and where, immediately prior to the search thereof, the officers had seen appellant drive it.

Appellant's residence was situated outside the city limits of the City of Houston. The searches were made by police officers of the City of Houston, including, among several others, the Chief of Police, and Officers Eubanks and Martindale. The last two named officers each carried a commission as a Special Deputy Sheriff of Harris County. As to such commissions, the record is silent as to when they were issued, or when, or in what manner, the officers qualified thereunder; nor does the record reflect in what particular the commissions were special, as distinguished from regular commissions.

Officers Eubanks and Martindale each testified that the searches were made by them as deputies sheriff acting under the search warrants.

In addition to the foregoing facts, the record reflects the following:

Detective of Police Davidson, who was one of the affiants to the complaint for the issuance of the search warrants, testified, relative to those present at the time of the search, as follows:

"The other officers with me were Captain T. B. Morris and Lieutenant McGill, who is. now in the navy. We three were together in one car and Assistant Chief Eubanks, Captain A. C. Martindale * * * * were in another car."

"The officers' return upon the respective search warrants showing the result of the search was made in the name of the Chief of Police of the City of Houston, by deputy policemen Davidson and Collins.

The bills of exception presenting this question contain the following certificate:

"Be it remembered further that no officer present at the time of the searches and seizures described in this Bill of Exceptions was at such time a sheriff, or any constable of Harris County, Texas; nor was any such officer a deputy constable of Harris County, Texas; nor was any such officer a regular deputy

sheriff of Harris County, Texas; but two of such officers, namely, Tom Eubanks and A. C. Martindale carried special deputy sheriff commissions, but such two named officers were regular police officers of the City of Houston and received their compensation as police officers of said city and did not draw any compensation as special deputy sheriffs; and neither the sheriff or any constable nor any regular deputy sheriff nor any deputy constable of Harris County, Texas, accompanied such officers on such raid nor was present at the time thereof."

The trial judge's unqualified approval of the bills of exception constitutes a certificate by him that the facts set forth in the certificate above quoted are true.

It is the appellant's contention that officers Eubanks and Martindale were, at the time of the execution of the search warrants, police officers of the City of Houston; that they were not and could not be Deputies Sheriff of Harris County, because of the Constitutional inhibition against one person's holding two offices of emolument at the same time; and that, as a consequence thereof, their purported acts as deputies sheriff were void and the searches were illegal.

It is the State's position that, if the named officers were not deputies sheriff de jure, they were such officers de facto; that, as between such officers and the public as well as the appellant, their acts as such officers de facto were binding and were not subject to the collateral attack which appellant here sought to make; and that, by reason thereof, the fact that the two named officers were policemen of the City of Houston and drew compensation as such could not be utilized by the appellant to attack the acts of said officers as deputies sheriff. In its final analysis, then, it is the State's contention that so long as officers Eubanks and Martindale acted or claimed to act as deputies sheriff under the color of the authority conferred by special deputies sheriff commissions, their acts as deputies sheriff could not be attacked by appellant by an objection to the receipt in evidence of the testimony obtained as a result of the search, and this even though said officers were, at the time, policemen of the City of Houston.

There is no question but that if the two named officers, or either of them, were deputies sheriff de jure or de facto, the search in so far as the authority of the officers executing the search warrants was concerned, was legal. It is immaterial whether others unauthorized to execute the warrants were present and assisted in the searches under the direction of the deputies sheriff.

So, the question before us is whether or not Eubanks and Martindale were deputies sheriff de facto, it not being contended that they were such officers de jure.

In considering this question, certain provisions of our State Constitution, as well as established rules of law, stand out.

Our State Constitution, Art. XVI, Sec. 40, provides:

"No person shall hold or exercise, at the same time, more than one Civil Office of emolument, except that of Justice of Peace, County Commissioner, Notary Public and Postmaster, Officer of the National Guard, the National Guard Reserve, and the Officers Reserve Corps of the United States and enlisted men of the National Guard, the National Guard Reserve, and the Organized Reserves of the United States, and retired officers of the United States Army, Navy, and Marine Corps, and retired warrant officers, and retired enlisted men of the United States Army, Navy, and Marine Corps, unless otherwise specially provided herein. Provided, that nothing in this Constitution shall be construed to prohibit an officer or enlisted man of the National Guard, and the National Guard Reserve, or an officer in the Officers Reserve Corps of the United States, or an enlisted man in the Organized Reserve of the United States; or retired officers of the United States Army, Navy, and Marine Corps, and retired warrant officers, and retired enlisted men of the United States Army, Navy, and Marine Corps, from holding in conjunction with such office any other office or position of honor, trust or profit, under this State or the United States, or from voting at any Election; General, Special or Primary, in this State when otherwise qualified."

The term "emolument," as used therein, means a pecuniary profit, gain or advantage. 34 Tex. Jur. p. 349, Sec. 17. The offices of policeman of an incorporated city and a deputy sheriff are not included within the exceptions mentioned in the Constitutional provision.

A policeman of an incorporated city is an officer. McDonald v. City of Dallas, 69 S. W. (2d) 175; Ex parte Preston, 72 Tex. Cr. R. 17, 161 S. W. 115; Yett v. Cook, 116 Tex. 205, 281 S. W. 837; Art. 36 C. C. P.; so also is a deputy sheriff an officer. Clayton v. State, 21 Tex. App. 343, 17 S. W. 261; Murray v. State, 125 Tex. Cr. R. 252, 67 S. W. (2d) 274; and Art. 36, C. C. P.

Compensation being authorized by law to be paid for services rendered by policemen and deputies sheriff renders such offices those of emolument, under the provisions of the Constitution mentioned. Hence the named officers could not at the same time be both policemen and deputies sheriff de jure or de facto.

In order for the searches to be legal, officers Eubanks and Martindale, or either of them, were required to be deputies sheriff, because they could not have executed the warrants or made the searches thereunder, as policemen, outside the limits of the City of Houston, their territorial jurisdiction as policemen being restricted to the confines of that city. Weeks v. State, 132 Tex. Cr. R. 524, 106 S. W. (2d) 275; Ledbetter v. State, 23 Tex. App. 247, 5 S. W. 226; Peter v. State, 23 Tex. App. 684, 5 S. W. 228; Jones v. State, 26 Tex. App. 1, 9 S. W. 53, 8 Am. St. Rep. 454; and 4 Am. Jur. p. 13, Sec. 17.

We are not unmindful of the general rule to the effect that, ordinarily, the acts of a de facto officer may not be collaterally attacked by third parties. Such rule is recognized not only by this court but by the courts of other jurisdictions. 43 Am. Jur. 241; Hagler v. State, 116 Tex. Cr. R. 552, 31 S. W. (2d) 653; 34 Tex. Jur. p. 629, Sec. 171. However, such rule has no application until and unless the officer whose acts are sought to be questioned is an officer de facto, that is, an officer who is not a good officer in point of law, but who has the reputation of being the officer he purports to be, or who, under color of authority, assumes the duties of the office. 34 Tex. Jur., Sec. 161, p. 614; 43 Am. Jur. 225.

So, the question of primary importance to be determined first is whether or not the record reflects that officers Eubanks or Martindale were deputies sheriff de facto. If they were not, their acts as such officers were void and of no binding effect. Biencourt v. Parker, 27 Tex. 558; Odem v. Sinton Independent School District, 234 S. W. 1090; Faubion v. State, 104 Tex. Cr. R. 78, 282 S. W. 597; Ex parte Lewis, 45 Tex. Cr. R. 1, 73 S. W. 811; 34 Tex. Jur. 631.

From the record before us, touching the question at issue, a reasonable deduction is that officers Eubanks and Martindale were, at the time they started out to make the search of appellant's premises, policemen of the City of Houston, and had been continuously so employed for a number of years, drawing their salary and compensation as such. Their fellow police officers and associates so knew and recognized them. There is no evidence

that, at any time prior to the searches, said officers claimed to be deputies sheriff of Harris County and not policemen of the City of Houston; nor at any time prior or subsequent to the searches did they commit any act or perform any duty, as deputies sheriff, under the authority of the special deputy sheriff commissions carried by them. They did not so much as make the return upon the search warrants as deputies sheriff. When they ceased to be deputies sheriff and re-entered upon the duties of policemen of the City of Houston—which, the record reflects, they were at the time of the trial of this case—is not shown.

When considered together, all the facts and circumstances here presented lead inevitably to but one conclusion, and that is that, on the occasion of the search of appellant's property, the two named officers, while holding tenaciously to the office of policemen of the City of Houston, with no intention to abandon or to vacate that office, attempted to make use of their deputy sheriff commissions to clothe themselves with color of authority to act as deputies sheriff, and for the single purpose of executing the search warrants in this case.

In the Biencourt v. Parker case, supra, a decision by the Supreme Court of this State, a notary public had been elected to the office of county clerk. After becoming such clerk, this person took a deposition as a notary public. The introduction of the deposition was refused admission in evidence because the officer taking the deposition was not authorized to do so, under the constitutional provisions prohibiting a person from holding two offices of emolument. In reaching that conclusion, the court said:

"Having ceased to be de jure a notary public for some time previous to taking this deposition, it can not be pretended that this single act, which is all that he is shown to have attempted to do in this capacity, will constitute him a notary public de facto."

The Supreme Court of Tennessee, in the case of Ridout v. State, 161 Tenn. 248, 30 S. W. (2d) 255, 71 A. L. R. 830, calls attention to the Biencourt v. Parker case, supra, and, after an extensive review of the authorities, sets forth certain exceptions to the general rule relative to collateral attack upon the acts of de facto officers by third parties, among which exceptions is the following:

"Where the act, or exercise of the office, was single, continuity being lacking."

In Odem v. Sinton Independent School District, supra, the Supreme Court of this State, speaking through its Commission of Appeals, held that, while holding the office of city assessor and collector of taxes, one could not become the de facto assessor and collector of taxes of an independent school district, and that a tax assessment made as such de facto officer was void.

Under such circumstances here presented, and the authorities cited, to hold that said officers were deputies sheriff de facto would nullify, and would render without force or effect, the express provisions of Sec. 40 of Art. XVI of our State Constitution, which prohibits the holding, by one person, at the same time, of two offices of emolument. This we are unwilling to do. We conclude, therefore, that, at the time of the searches, the two named officers were not deputies sheriff de facto, and that their purported acts as such were without authority of law.

The conclusion is reached that the search of appellant's premises was illegal.

Appellant specially attacks the search of his automobile, upon the ground that no statutory authority exists for the issuance of a search warrant to search an automobile for implements kept for the purpose of aiding in committing the offense of operating a policy game, as was done in this case.

In the case of Cagle v. State, supra, we held that, under the provisions of Art. 312, C. C. P., search warrants may issue to search a place for implements kept for the purpose above mentioned.

We do not discuss the question of the search of appellant's automobile under the warrant. An automobile may be searched, without a warrant, upon probable cause, for implements used in the operation of a policy game or gaming. Such implements, as well as gaming paraphernalia generally, being contraband, a search therefor upon probable cause is authorized under the general authority to search an automobile, upon probable cause, for contraband articles. Tendia v. State, 111 Tex. Cr. R. 627, 13 S. W. (2d) 849; Battle v. State, 290 S. W. 762, 105 Tex. Cr. R. 568; Silver v. State, 8 S. W. (2d) 144, 110 Tex. Cr. R. 512, 60 A. L. R. 290; Odenthal v. State, 106 Tex. Cr. R. 1, 290 S. W. 743; Carroll v. United States, 267 U. S. 132, 45 Sup. Ct. Rep.

280, 69 L. ed. 543, 39 A. L. R. 790; Scher v. United States, 305 U. S. 251, 83 L. ed. 151. However, the search of the automobile in the instant case cannot be justified as being a search upon probable cause, because of the lack of territorial jurisdiction of the officers making the search, as we have heretofore pointed out. Henson v. State, 120 Tex. Cr. R. 176, 49 S. W. (2d) 463.

The introduction of evidence material to the State's case, and incriminative of the appellant, relative to the offense for which he was upon trial, obtained by an unwarranted and illegal search of his residence and automobile, requires a reversal of the judgment of conviction.

It follows that the judgment of the trial court is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.