## BOWEN et al. v. BOARD OF SCHOOL TRUS-TEES OF PANOLA COUNTY et al. (No. 3698.)

Court of Civil Appeals of Texas. Texarkana. April 4, 1929.

B. W. Baker and P. P. Long, both of Carthage, for appellants.

R. W. Priest, of Carthage, and Futch & Cooper and Chas. L. Brachfield, all of Henderson, for appellees.

HODGES, J. This appeal is from an order refusing to grant a temporary writ of injunction restraining school trustees from issuing bonds. The applicants for the writ, appellants here, reside and own property situated in the Beckville independent school district and several contiguous common school districts in Panola county. On September 10, 1928, the county board of school trustees of Panola county passed an order for an election in the Beckville independent school district and five contiguous common school districts, for the purpose of enabling the qualified voters to vote upon the following proposition: "Shall the Board of County School Trustees of Panola County, Texas, be authorized to form a Rural High School District, to be known as the Beckville High School District No. 3, Panola County, Texas, by grouping the Beckville Independent School District with the Harris Chappel Common School District No. 4, Rock Hill Common School District No. 18, Scruggs Common School District No. 19, Sims Common School District No. 28, Broome Common School District No. 29, and the Waldrop Common School District No. 30?"

Notice posted by the secretary of the board reads as follows: "Shall the Board of County School Trustees be authorized by popular vote to form an enlarged Independent School District, to be known as the Beckville Independent High School District, Panola County, Texas, by annexing (then follow the names of the above mentioned common school districts) to the Beckville Independent District?"

The election was held, and a majority of the votes cast were in favor of creating the high school district. After canvassing the returns and declaring the result of the election, the county board of trustees passed the necessary orders for completing the organization of the district. The district trustees then appointed entered upon the duties of their office, and thereafter, in response to a petition, ordered an election to enable the qualified voters of the new district to determine whether or not bonds in the sum of $45,000 should be issued for the support and maintenance of the district schools. The election was held, and resulted in favor of

the bond issue. After declaring the result of that election, the district trustees prepared and submitted to the Attorney General a transcript of the proceedings required by law for the issuance of the bonds authorized. The transcript was approved by the Attorney General, and bids for the purchase of the bonds were received and accepted by the district trustees. But before the bonds were issued and delivered, the appellants applied for this writ of injunction. The application for the injunction was presented in vacation to Hon. R. T. Brown, judge of the district court of Panola county, who, after a hearing of the parties, refused to grant the writ.

The principal ground alleged in the application for the injunction is that the rural high school district had not been legally created, and that the individuals appointed by the county board as district trustees had no legal authority to act as such. The validity of the organization of the district and the authority of the district trustees are attacked upon the ground that the election ordered by the county board of trustees to determine whether or not the high school district should be created was void because of the variance between the order originally adopted by the county board and the notice of the election that was posted by the secretary. Article 2922A of the Revised Civil Statutes, as amended by the Acts of the Fortieth Legislature, 1st Called Sess., p. 206, which authorizes the creation of rural high school districts, is as follows: "In each organized county in this state and in any county which shall hereafter be organized, the county school trustees shall have the authority to form one or more rural high school districts, by grouping contiguous common school districts having less than four hundred scholastic population and independent school districts having less than two hundred and fifty scholastic population for the purpose of establishing and operating rural high schools, provided also that the county school trustees may annex one or more common school districts or one or more independent school districts having less than two hundred and fifty scholastic population to a common school district having four hundred or more scholastic population or to an independent district having two hundred and fifty or more scholastic population upon the approval of the board of trustees of each school district affected; provided that when one or more common school districts are so annexed to a common school district having four hundred or more scholastic population, or to an independent district having two hundred and fifty, or more, scholastic population, as the case may be, a board of trustees shall be elected from the district at large and shall have the management and control of the district as enlarged until the time for the next election and qualifications of trustees for common and independent districts, as provided by General Law."

It will be observed that this article provides for two methods of creating rural high school districts—one by grouping contiguous districts, thus forming a new district; and the other by annexing contiguous districts to an existing district. The order adopted in this case by the county board was for grouping the districts named, whereas the notice by the secretary submitted to the voters the proposition of annexing the contiguous districts named to the Beckville independent school district. It is conceded that the election was not contested, or its validity attacked in any way, until this proceeding was commenced.

The appellees contend that, even if the election was irregular and void, for the reasons stated, the validity of the organization of the district, and the authority of the trustees to act as such, cannot be called in question in a collateral proceeding for an injunction. We think that proposition is correct, and that the writ was properly refused.

The proper remedy for testing the validity of a corporate organization, or the right of de facto officers to assume and exercise official functions, is by a quo warranto proceeding in the name of the state. Article 6253, Rev. Civ. Stat. 1925; Brennan v. City of Weatherford, 53 Tex. 330, 37 Am. Rep. 758; Caraway v. Romberg (Tex. Civ. App.) 247 S. W. 909; Terrell et al. v. Clifton Independent School Dist. (Tex. Civ. App.) 5 S.W.(2d) 808; Houston v. Little (Tex. Civ. App.) 244 S. W. 255. A rural high school district is a subdivision of the state, and, in some respects, a municipal corporation. The trustees of such a district are endowed with some governmental functions. As said by Mr. Cooley in his work on Constitutional Limitations, p. 363 (7th Ed.): "The questions are generally questions between the corporators and the state, with which private individuals are supposed to have no concern. In proceedings where the question whether a corporation exists or not arises collaterally the courts will not permit its corporate character to be questioned if it appear to be acting under color of law and recognized by the state as such. Such a question should be raised by the state itself by quo warranto or other direct proceeding."

The Legislature has imposed upon the county trustees the duty of conducting the proceedings necessary for the purpose of organizing rural high school districts, and of appointing the first district trustees where these are not elected at the time of the organization. That procedure was followed in this case. The district trustees were appointed, and began the exercise of their official functions by receiving and passing on petitions for an election to determine whether or not certain indebtedness of the component districts should be assumed by the

high school district, and bonds issued for the purpose of maintaining schools in the future. A transcript of the essential proceedings was presented to and approved by the Attorney General. In performing these services, the district trustees were manifestly acting under the color of office, and should be here treated as de facto officers.

An injunction is not an appropriate remedy for testing the legality of the organization of the district, or to restrain its officers from acting in their official capacity on the ground that the district was not properly organized. 2 High on Injunctions (3d Ed.) pp. 975 and 985.

The property taxpayers of the district were not without an appropriate remedy for the correction of whatever irregularity there may have been in the election proceedings occurring before the organization of the district and the appointment of the trustees. The failure of the secretary of the county board to post the proper notice, if a fatal omission, was one which might have been urged by appellants in a contest of the election. Article 3042 confers upon any interested party the right to file a contest of such an election within 30 days after the returns are made. Article 3075 provides, in substance, that, unless a contest is filed within the time prescribed by law, "it shall be conclusively presumed that said election as held and the result thereof as declared are in all respects valid and binding upon all courts."

We are further of the opinion that it cannot be said, as a matter of law, that the trial judge abused his discretion in refusing to grant the temporary order upon other grounds disclosed by the record.

The judgment will be affirmed.