

# The Attorney General of Texas

January 15, 1986

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. William S. Nail
Executive Director
Texas State Board of Dental
   Examiners
411 West 13th Street
Suite 503
Austin, Texas    78701

Opinion No.  JM-423

Re:  Effect of the participation
of an individual on a licensing
board when it is subsequently
determined that she was not con-
firmed by the Texas Senate

Dear Mr. Nail:

You have requested an opinion based on these facts:

> On March 5, 1982, Governor Bill Clements appointed Mrs. Geraldine Tucker as a public member, Texas State Board of Dental Examiners. On May 26, 1983, the Texas Senate refused to confirm Mrs. Tucker's appointment. Neither Mrs. Tucker nor the agency were aware of the action taken by the Senate and Mrs. Tucker continued to serve as a public member of the board until December 4, 1984, when during a routine audit of the Dental Board, the records of the secretary of state were reviewed and revealed that Mrs. Tucker had not been confirmed by the Senate.

> Mrs. Tucker served for approximately 18 months subsequent to the denial of her confirmation by the Senate. During this time she performed all duties required of a public member of the board, including actions in disciplinary cases. In addition the board reimbursed Mrs. Tucker approximately $11,735.22 for travel and per diem during this period of time. All of the service performed by Mrs. Tucker was done in good faith and neither Mrs. Tucker nor the board was aware of the Senate's action in denying her confirmation.

Your questions are:

> [W]hat is the effect of Mrs. Tucker's participation in disciplinary cases?  Also, is Mrs. Tucker

liable for the $11,735.22 which she received in
the form of travel reimbursement and per diem?

Article 4543, V.T.C.S., creates a Texas State Board of Dental
Examiners consisting of 12 members, three of whom "must be members of
the general public." Sec. 1(a). Board members are appointed by the
governor for "one six-year term or until their successors shall be
appointed and qualify." Id. §2. The Senate must confirm these
appointments. See White v. Sturns, 651 S.W.2d 372 (Tex. App. - Austin
1983, writ ref'd n.r.e.).

On March 5, 1982, the governor appointed Mrs. Tucker to the board.
This triggered article IV, section 12 of the Texas Constitution:

> All vacancies in State or district offices,
> except members of the Legislature, shall be filled
> unless otherwise provided by law, by appointment
> of the Governor, which appointment, if made during
> its session, shall be with the advice and consent
> of two-thirds of the Senate present. If made
> during the recess of the Senate, the said
> appointee, or some other person to fill such
> vacancy, shall be nominated to the Senate during
> the first ten days of its session. If rejected,
> said office shall immediately become vacant, and
> the Governor shall, without delay, make further
> nominations, until a confirmation takes place.
> But should there be no confirmation during the
> session of the Senate, the Governor shall not
> thereafter appoint any person to fill such vacancy
> who has been rejected by the Senate; but may
> appoint some other person to fill the vacancy
> until the next session of the Senate or until the
> regular election to said office, should it occur
> sooner. Appointments to vacancies in offices
> elective by the people shall only continue until
> the first general election thereafter. (Emphasis
> added).

This provision creates two categories of appointments: those made
while the Texas Senate is in session and those made when it is in
recess. The former become effective only after joint action by the
governor and the Senate. The latter may immediately take their oath
of office and begin performing their duties. See, e.g., Attorney
General Opinions H-948 (1977); M-267 (1968); O-4864 (1942). As a
recess appointee, Mrs. Tucker was entitled to take the oath of office
and to begin performing her official duties after March 5, 1982. On
May 26, 1983, however, the Senate refused to confirm her appointment.
To answer your questions, we must determine her status after May 26.

Texas law recognizes a distinction between holding an office by title and holding it by sufferance. See State ex rel. Bickford v. Cocke, 54 Tex. 482 (1881); Tom v. Klepper, 172 S.W. 721 (Tex. Civ. App. - El Paso 1915, writ ref'd). The first type of officeholders are de jure officers with a legal right to their office. The latter, however, have no right to their office, but hold it by sufferance of the appointing power. Tom v. Klepper, supra; Jackson v. Houser, 208 S.W. 186 (Tex. Civ. App. - Amarillo 1918, no writ). An example of the latter is an individual whose term of office has expired but for whom there is no qualified successor. Under article XVI, section 17 of the Texas Constitution, which provides that

> [a]ll officers within this State shall continue to perform the duties of their offices until their successors shall be duly qualified[,]

this individual would continue in office as a holdover. Even though he would continue to physically occupy the office, however, a constructive vacancy would exist for purposes of naming his successor.

A constructive vacancy actually existed in Mrs. Tucker's office even before May 26, 1983. Although she was entitled to begin performing her duties after March 5, 1982, her appointment was, until confirmed by the Senate, subject to defeasance by the appointing power. This is made clear by article IV, section 12, which provides that if an appointment is

> made during the recess of the Senate, the said appointee, or some other person to fill such vacancy, shall be nominated to the Senate. . . . (Emphasis added).

If a governor need not submit the name of an interim appointee to the Senate for confirmation, but may nominate "some other person," the office is constructively vacant, in the sense that it may at any time be filled by another appointee even though the governor's recess appointee physically occupies the office. That Mrs. Tucker's appointment was subject to defeasance between March 5, 1982 and May 26, 1983 is, however, unimportant. We have no evidence indicating that, prior to May 26, the governor withdrew her name from consideration by the Senate. Therefore, she was lawfully entitled to serve as a member of the board from the date on which she took the prescribed oath of office and began performing her duties until May 26, 1983.

After May 26, 1983, however, the picture becomes more complicated. The question is whether, after that date, she continued in office as a "holdover" or a "de facto officer," see, e.g., Adamson v. State, 171 S.W.2d 121 (Tex. Crim. App. 1943); Jackson v. Maypearl Independent School District, 392 S.W.2d 892 (Tex. Civ. App. - Waco

1965, no writ) (discussing doctrine of "de facto officer"), or had no legal claim to her office. To resolve this issue we must decide how to apply article XVI, section 17 of the constitution.

Several Attorney General Opinions have commented on the relationship between article IV, section 12 and article XVI, section 17, in an instance in which the Senate has expressly rejected a governor's recess appointment. See, e.g., Attorney General Opinions H-948 (1977); M-267 (1968); V-858 (1949); O-4920 (1942); O-3343 (1941). Most nearly on point is Opinion O-3343. There the question was

> whether [Tom C. King's] tenure of the office of State Auditor and Efficiency Expert ended when the Senate rejected [his] appointment, or whether it [was his] duty to hold the office 'de facto' until another official is appointed and has qualified.

The opinion relied on Denison v. State, 61 S.W.2d 1017 (Tex. Civ. App. - Austin 1933), writ ref'd per curiam, 61 S.W.2d 1022 (Tex. 1933), where the court, discussing article IV, section 12, said:

> The language, 'if rejected, said office shall immediately become vacant, and the governor shall, without delay, make further nominations, until a confirmation takes place,' clearly and by necessary implication denies to a nominee, whose confirmation has been rejected by the Senate, any right whatever to occupy the office or to discharge, after such rejection, any of the duties thereof. (Emphasis added).

61 S.W.2d at 1021. The opinion concluded that

> Article 16, Section 17, is a general provision, while Section 12 of Article 4 is a special one dealing with this identical problem. To hold that said Section 17 is effective here, in our opinion would be to nullify a part of said Section 12 of Article 4, and thus a general provision would be held to control the special one, which is contrary to the well established rule of construction.

It held that Mr. King's "duties and tenure of office ended on March 6, 1941, when [his] appointment was rejected by the Senate," and it gave three reasons for this conclusion:

> (1) Where a recess appointment is made, as was the case here, the Governor is not required to nominate such recess appointee to the Senate. He

is just as free before rejection as he is afterward to submit the name of someone else.  The requirement merely is that 'the said appointment, or some other person to fill such vacancy, shall be nominated to the Senate during the first ten days of its session.'  So, a vacancy in the limited sense suggested existed before the rejection.  Hence, if the provision 'said office shall immediately become vacant' means anything it is that the office becomes vacant physically as well as legally.

(2)  To hold that such an officer would hold over even after he has been rejected until a successor should be nominated, confirmed and has qualified, would be to open the way to a complete disregard of Section 12 of Article 4, State Constitution.  For, if such an officer is not definitely 'out' upon rejection, no end logically can be found for his service, if by [chance] the Senate should adjourn without the appointment, confirmation and qualification, of a successor.  Under that interpretation, if at some future time a Governor should desire to do so, he could maintain his appointee in office year after year, notwithstanding rejection by the Senate, by simply failing to nominate or appoint someone else.

(3)  In providing that if there should be no confirmation during the session [the] governor 'shall not thereafter appoint any person to fill such vacancy who has been rejected by the Senate,' the writers of Section 12 evidently thought they had already effectively eliminated the rejected appointee from office and were foreclosing the only remaining possibility that a rejected appointee or nominee be allowed to hold such office.

Subsequent opinions take the same position.  Attorney General Opinion V-868, for example, dealt with the effect of the Senate's failure to act on a recess appointment and the governor's subsequent withdrawal of that appointment.  It discussed Attorney General Opinion O-3343 as well as Attorney General Opinion 1809 (To Hon. Will D. Suiter, Aug. 18, 1917), 1916-1918 Tex. Att'y Gen. Biennial Rep. 424, which reached a conclusion different from that of O-3343.  After quoting from and discussing Denison v. State, supra, Attorney General Opinion V-868 said that "[Denison] is not authority except perhaps in the case of an affirmative rejection."  This signifies that although

the opinion did not deem Denison to be controlling when the Senate fails to act on a recess appointment, a question not at issue here, it thought the contrary is true when the Senate has "affirmative[ly] reject[ed]" such an appointment.

Attorney General Opinions M-267 and H-948 are in accord. The former states:

> Where the appointment is a recess appointment or one made to fill a vacancy in the office occurring while the Senate is not in session, the appointee is entitled to the office until the Senate acts adversely upon his nomination, 38 Am.Jur.2d 937, Governor, Sec. 7; 42 Am.Jur. 983, Public Officers, Sec. 142; or until the Governor makes a new appointment. Tex. Const., Art. IV, Sec. 12. (Emphasis added).

The latter says:

> If the Senate fails to act on a recess appointment or on an appointment made during the session of an individual to succeed himself in office, the individual can continue to exercise the duties of office pursuant to the requirements of article 16, section 17, of the Texas Constitution, until the Senate subsequently rejects the nomination or until the Governor appoints another individual. (Emphasis added).

Although it primarily concerned the effect of the Senate's failure to act on a recess appointment, this opinion is noteworthy. Like Attorney General Opinion O-3343, it deals specifically with article XVI, section 17 and states that after express rejection by the Senate a recess appointee can no longer continue to exercise the duties of his office.

Thus, prior opinions agree that the portion of article IV, section 12 which provides that "If [a recess appointee is] rejected [by the Senate], said office shall immediately become vacant . . ." must mean "vacant" both actually and constructively, and that a recess appointee has no right to hold over under article XVI, section 17 after the Senate refuses to confirm him. Indeed, this is the only logical conclusion. To hold otherwise would nullify the quoted portion of article IV, section 12 and undermine the next portion thereof. This portion provides that if the Senate rejects a recess appointment, the governor is to make further nominations until a confirmation takes place; however,

> should there be no confirmation during the session
> of the Senate, the Governor shall not thereafter
> appoint any person to fill such vacancy who has
> been rejected by the Senate. . . .

This evidences a clear intent to erect an insurmountable barrier barring any recess appointee who has been rejected by the Senate from continuing to perform the duties of the office.

We therefore conclude that after Mrs. Tucker was rejected by the Senate on May 26, 1983, she was not a holdover under article XVI, section 17. On that date she forfeited "any right whatever to occupy the office or to discharge, after such rejection, any of the duties thereof." Denison v. State, supra, at 1021.

This conclusion also disposes of a corollary argument, viz., that after May 26 Mrs. Tucker was a "de facto officer." Various courts have discussed this concept. Adamson v. State, supra, at 124, for example, observed that "a de facto officer is one who holds, and is in possession of, an office under some appearance or color of right or title, although not legally entitled to the same." Germany v. Pope, 222 S.W.2d 172, 176 (Tex. Civ. App. - Fort Worth 1949, writ ref'd n.r.e.), said that a "de facto officer is one who, by his acts, has the appearance of being the officer he assumes to be, but one who in fact has no title to the office he assumes to hold. . . ." French v. State, 572 S.W.2d 934 (Tex. Crim. App. 1977), said that the doctrine was created as a matter of public policy to protect both officers appointed by some power having "color" of authority to appoint them and the public which relies on the validity of that appointment.

We do not believe that our courts would apply this doctrine in this instance. First, after May 26, Mrs. Tucker had no "appearance or color of right or title" to her office. Second, Denison v. State, supra, unequivocally states that a recess appointee who is rejected by the Senate has "[no] right whatever to occupy the office or to discharge . . . any of the duties thereof." 61 S.W.2d at 1021 (emphasis added). To apply the doctrine here would fly in the face of this pronouncement. Third, policy considerations do not warrant the application of this doctrine. The Senate's decision not to confirm Mrs. Tucker was taken in open session and is a matter of public record. Someone involved in this matter should have been cognizant of the Senate's action. To treat Mrs. Tucker as a de facto officer between May 26, 1983 and December 4, 1984 would sanction, if not actually encourage, oversights of this nature. This is not sound public policy.

In Irwin v. State, 177 S.W.2d 970 (Tex. Crim. App. 1944), the court refused to hold that city policemen who conducted searches while purporting to be deputy sheriffs were de facto deputies. It concluded

that policemen and deputy sheriffs hold "offices of emolument" within the meaning of article XVI, section 40 of the Texas Constitution, which prohibits certain kinds of dual-officeholding, and that to call the policemen de facto deputies would "nullify, and would render without force or effect, the express provisions of Sec. 40 of Art. XVI. . . . This we are unwilling to do." 177 S.W.2d at 974. See Faubion v. State, 282 S.W. 597, 598 (Tex. Crim. App. 1926) (notary public who did not qualify by taking oath and making bond within legally prescribed time not de facto officer, because when appointment became void "nothing that she did . . . could in any manner re- suscitate it. She acted without color of a valid appointment. . . ."). To apply the doctrine in this instance would negate part of article IV, section 12 through application of a common law doctrine.

We therefore conclude that Mrs. Tucker had no right or color of right to continue in office in any capacity after May 26, 1983. Section 2 of article 4543, V.T.C.S., which provides that board members serve "until their successors shall be appointed and qualify," does not compel a different conclusion. In this instance, this statutory provision is necessarily superceded by the constitutional prohibition in article IV, section 12. Since Mrs. Tucker was neither a holdover nor a de facto officer after May 26, 1983, all official actions and decisions taken by her after that date are void. See, e.g., Williams v. Castleman, 247 S.W. 263 (Tex. 1922); Odem v. Sinton Independent School District, 234 S.W. 1090 (Tex. Comm'n App. 1921, judgmt adopted). What effect this has on disciplinary cases in which she participated during this time must be determined on a case-by-case basis. Section 2 of article 4543, V.T.C.S., gives the State Board of Dental Examiners the power to "prescribe rules and regulations . . . governing its own proceedings. . . ." If, under the board's rules, the outcome in a disciplinary case would have been the same regardless of whether her vote is counted, the fact that her vote was void would be inconsequential. If hers was the decisive vote in a case, however, the decision in that case would be subject to attack. See, e.g., Salyer v. State, 316 S.W.2d 420 (Tex. Crim. App. 1958); Anderson v. State, 195 S.W.2d 368 (Tex. Crim. App. 1946); Bowen v. Board of School Trustees of Panola County, 16 S.W.2d 424 (Tex. Civ. App. - Texarkana 1929, no writ); 47 Tex. Jur. 2d Public Officers §262.

The remaining question is whether Mrs. Tucker is liable for travel reimbursement and per diem received after May 26, 1983. Emolu- ments attached to an office belong to the person legally holding that office. See, e.g., Markwell v. Galveston County, 186 S.W.2d 273 (Tex. Civ. App. - Galveston 1945, writ ref'd). Before one can recover these emoluments, he must show that he is an officer de jure, that the office has been legally created and is in existence, and that he has a legal right thereto. See, e.g., Jones v. City of Uvalde, 79 S.W.2d 341 (Tex. Civ. App. - San Antonio 1935, writ ref'd); City of San Antonio v. Coultress, 169 S.W. 917 (Tex. Civ. App. - San Antonio 1914,

writ dism'd). We conclude that Mrs. Tucker was not entitled to travel reimbursement and per diem after May 26.

### S U M M A R Y

A member of the Texas State Board of Dental Examiners appointed by the governor while the Texas Senate was in recess and later rejected by the Senate is not thereafter a holdover under article XVI, section 17 of the Texas Constitution or a "de facto officer." Decisions made by her after rejection are subject to attack. She was not entitled to reimbursement for travel expenses or per diem incurred after rejection.

Very truly yours,

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jon Bible
Assistant Attorney General